No. 84-159

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

_____

TRUCK INSURANCE EXCHANGE,
a Recriprocal and Inter-Insurance
Exchange,
                    Plaintiff and Appellant,

        -vs-

INDUSTRIAL INDEMNITY CO.,

                    Defendant and Respondent.

_____

APPEAL FROM:  The District Court of the Eighteenth Judicial District,
              In and for the County of Gallatin,
              The Honorable Thomas Olson, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

        Morrow, Sedivy & Bennett, Bozeman, Montana

      For Respondent:

        Corette, Smith, Pohlman & Allen, Butte, Montana

_____

Submitted on Briefs:  June 28, 1984

Decided:  October 1, 1934

Filed: OCT 1 - 1984

*Ethel M. Harrison*
_____
                Clerk

Mr. Justice Frank B. Morrison, Jr. delivered the Opinion of the Court.

This action was brought before the Eighteenth Judicial District Court on cross-motions for summary judgment. The motions were supported by depositions, briefs and memoranda. Defendant and respondent, Industrial Indemnity's motion was granted February 14, 1984. Judgment for Industrial Indemnity was entered March 13, 1984. Truck Insurance appeals. We vacate the March 13, 1984, judgment and remand, with instructions to enter summary judgment for Truck Insurance.

Wilbur Kimm has been a grain and potato farmer in the Gallatin Valley for a number of years. He owns his own land and farming equipment and has developed his own storage warehouses. Industrial Indemnity is the provider of the insurance on his farm equipment, vehicles and liability for farm operations.

Wilbur's son, William Kimm became an employee of Wilbur in 1973. William ceased working for his father in 1976 and started his own potato operation. By 1981 William owned one acre of land on which he built a potato storage warehouse. His potatoes are grown on land leased from other individuals. William uses Wilbur's potato planter and grader when they are needed, but owns several other pieces of farm equipment. Truck Insurance is William's insurance provider.

William and Wilbur each grow approximately the same amount of seed potatoes. The potatoes are stored together and are advertised in three magazines under the name Wilbur Kimm and Son.

William arranged to sell their seed potatoes to several area farmers in the spring of 1981. Against Wilbur's advice, William treated the potatoes with a formaldehyde/clorox mixture prior to the sale. The treatment was to protect

2

against pathogens bacteria and the spread of airborne diseases during transport and storage. Instead, the treatment destroyed the seed potatoes and the various buyers suffered crop damage.

The buyers filed claims against <u>William</u>. Truck Insurance settled the claims for $174,985.83. In exchange, the buyers each signed a covenant not to sue containing the following language:

> "IT IS FURTHER SPECIFICALLY AGREED by and between the parties hereto that this agreement does not preclude or prohibit WILLIAM KIMM or TRUCK INSURANCE EXCHANGE from asserting a claim as against WILBUR KIMM, or his insurer, seeking contribution from said WILBUR KIMM, and in this regard, this agreement shall be considered an assignment by the undersigned to said WILLIAM KIMM and TRUCK INSURANCE EXCHANGE of the undersigned's right and interest in and to said claim as against WILBUR KIMM."

Truck Insurance then filed this complaint, seeking contribution from Industrial Indemnity in the amount of one-half the claims, $87,492.92. The action is based on Truck Insurance's assertion that Wilbur Kimm and Son is actually a partnership.

If Wilbur Kimm and Son is a partnership in the business of raising potatoes, the Uniform Partnership Act, sections 35-10-101, MCA, et seq. applies. Section 35-10-401(1), MCA states:

> "Rules determining rights and duties of partners. The rights and duties of the partners in relation to the partnership shall be determined, subject to any agreement between them, by the following rules:
>
> "(1)     Each partner shall be repaid his contributions whether by way of capital or advances to the partnership property and share equally in the profits and surplus remaining after all liabilities, including those to partners, are satisfied <u>and must contribute towards the losses, whether of capital or otherwise, sustained by the partnership according to his share in the profits.</u>" (emphasis added)

3

Therefore, if the business is a partnership, Wilbur, and thus Industrial Indemnity as his insurer, is liable under a contribution theory for a portion of the claims paid by William to the buyers. J. Crane and A. Gromberg, Law of Partnership, Section 65(a) at 366-368 (1968).

In his order finding no partnership and granting Industrial Indemnity's motion for summary judgment, the trial judge relied primarily on the Kimms' testimony that they did not intend for a partnership to exist. Although the intent of the parties is a major factor, Bender v. Bender (1965), 144 Mont. 470, 480, 397 P.2d 957, 962, "[i]f the facts bring the arrangement within the definition of a partnership, the parties cannot escape liability incident to that relationship merely by saying that no such thing exists." Simons v. Northern Pac. Ry. Co. (1933), 94 Mont. 355, 369, 22 P.2d 609, 614. If the intended action of the parties creates a partnership in fact, what the parties call their arrangement or intend their arrangement to be is irrelevant.

A partnership is defined in section 35-10-201(1), MCA, as "an association of two or more persons to carry on as co-owners a business for profit." Section 35-10-202, MCA, provides rules for determining whether a partnership exists. Part 4 is particularly relevant here:

> "Rules for determining the existence of a partnership. In determining whether a partnership exists, these rules shall apply:
>
> " . . .
>
> "(4) The receipt by a person of a share of the profits of a business is prima facie evidence that such person is a partner in the business, but no such inference shall be drawn if such profits were received in payment:
>
> (a) as a debt by installments or otherwise;
>
> (b) as wages of an employee or rent to a landlord;

(c) as an annuity to a surviving spouse or representative of a deceased partner;

(d) as interest on a loan, though the amount of payment varies with the profits of the business;

(e) as the consideration for the sale of a goodwill of a business or other property by installments or otherwise."

Wilbur and William Kimm have a joint bank account in the name of Kimm Seed. Buyers of potatoes pay one check to Kimm Seed rather than two separate checks of equal value to William and Wilbur. Expenses of the potato business, including the wages of a shared hired man, diesel fuel for the tractors, advertising, fertilizer and potato treatments, are paid out of the account rather than each party writing an expense check. The Kimms each raise approximately the same number of potatoes so incur the same amount of expenses and receive the same proceeds from the sale of their potatoes. At the close of the season, Wilbur and William split the money remaining in the account.

When questioned regarding the Kimms' practice of splitting the proceeds of the account at the close of each season, the Kimms' accountant, Gary Spitzer stated:

"I wouldn't describe it as a share of the profits because they would have other operating expenses connected with it that they paid personally. I would describe it as the excess of the receipts over the disbursements in that account." Gary Spitzer deposition, pp. 27-28.

No evidence of any separate, individual operating expense was ever presented. By sharing the proceeds of the Kimm Seed account equally, Wilbur and William Kimm are sharing "the excess of receipts over disbursements." They are, in effect, sharing profits equally.

It is undisputed that the testimony of Spitzer established that none of the exceptions to section 35-10-202(4), MCA, apply in this case. Therefore, the

5

splitting of the profits in the Kimm Seed account is prima facie evidence of a partnership between Wilbur and William Kimm. This prima facie evidence, coupled with the advertising of the seed potatoes under the name Wilbur Kimm and Son and the merging by the Kimms of resources and talents for the growing of the potatoes, clearly preponderates against the District Court's finding of no partnership. Montana Farm Service Co. v. Marquart (1978), 176 Mont. 357, 360, 578 P.2d 315, 316-317. Further, since Wilbur and William share in the profits of their partnership equally, they must also share in the losses equally. Section 35-10-401(1), MCA.

Thus, we vacate the order and judgment granting Industrial Indemnity's motion for summary judgment and remand the cause to the District Court for entry of an order and judgment granting Truck Insurance's motion for summary judgment and ordering Industrial Indemnity to pay $87,492.92 to Truck Insurance.

_____
Justice

We concur:

_____
Chief Justice

_____

_____
Justices

Mr. Justice L. C. Gulbrandson, dissenting.

I respectfully dissent.

The following facts are uncontroverted.

1. No federal, or state, partnership return was ever filed for income tax purposes.

2. The joint bank account was credited for convenience only, and was established at the suggestion of the accountant, who knew the parties did not intend to operate as partners.

3. Each party had his own identification number for W-2 form purposes.

4. Each party had other farm operating expenses that each paid personally.

5. Each party owned all necessary potato farming equipment, except a planter and a cutter, to operate independantly, but worked the seed potato properties jointly so they would not have to duplicate that equipment.

6. Each party farmed approximately the same acreage, and land lease payments were paid individually.

7. Each party carried separate liability insurance coverage, and paid the premiums individually.

8. Registration costs, and advertising expenses were halved by selling under a joint name.

9. Lab fees, involving the testing of approximately 46,000 plants, in a common plot, were reduced by using a joint name.

10. Individually owned trucks were fueled out of individually owned gas tanks, and each party paid personal property tax, and maintenance expenses, on his own

equipment.

11. Each party paid his own utility and power costs for his potato storage sheds.

12. The word "partnership" was never used by the parties in the magazine advertising, or on shipping tags.

13. Neither party could borrow or loan money for the other, and each borrowed individually to deposit funds in the joint account.

14. Each party described the working arrangement as a "trade of services."

15. William Kimm and Wilbur Kimm never considered the working arrangement as a partnership.

16. Wilbur Kimm had previously been in an unsatisfactory partnership, refused to be in a partnership, and did not want his sons to be in partnership with him or with each other.

In my view, the foregoing constitutes sufficient evidence to find that no partnership existed, and I would therefore affirm the trial judge.

_R. C. Gulbrandson._
Justice

-8-