No. 86-187

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

ROSS PULLIAM,

            Plaintiff and Appellant,

   -vs-

JAMES PULLIAM and FRED PULLIAM,
d/b/a PULLIAM CONSTRUCTION,

            Defendants and Respondents.

APPEAL FROM: District Court of the Fourth Judicial District,
In and for the County of Ravalli,
The Hon. Jack L. Green, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Kammerer Law Offices; Clinton Kammerer, Missoula,
        Montana

    For Respondent:

        Garlington, Lohn & Robinson; Lawrence F. Daly,
        Missoula, Montana

Submitted on Briefs: Jan. 22, 1987

Decided: March 11, 1987

Filed: MAR 11 1987

*Ethel M. Harrison*

Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from the District Court of the Fourth Judicial District, in and for Ravalli County, Montana. The appellant (Ross) appeals from a finding that he is not a one-third partner in Pulliam Construction with two other brothers. We affirm.

Jim, Fred and Ross Pulliam are brothers. Jim and Fred formed Pulliam Construction, a partnership, in 1967, in Missoula, Montana. The two brothers acquired parcels of real property and began building both "spec" and custom houses. The two brothers agreed to share equally the profits, losses, ownership and management of Pulliam Construction. The partnership purchased a farm near Stevensville, Montana, as an investment in 1969. At the time of trial Jim had lived in the farmhouse since 1971. Each of the brothers drew whatever cash he needed for living expenses from the partnership account.

Jim handled the record keeping and financial affairs of the business and Fred did the design layouts and prepared bids. The two brothers worked equally on construction projects, shared in the management of the business, dealt with subcontractors, financial institutions and customers.

In 1971 Pulliam's mother arranged with Jim and Fred for a younger brother, Ross, to come to Montana from Missouri to work for their construction business for a while. Ross lived in Fred's house and began working as a laborer. He had no business or building experience when he began working, owned no tools or equipment, had no special skills, and no money to contribute to the partnership business.

It was originally understood Ross would be working in Missoula for only about six months. During this time he was

to be provided with a place to live, food and living expenses, with the agreement Jim and Fred would settle with him when he moved back to Missouri. Ross decided not to return to Missouri, however, and the living and compensation agreement was continued. None of the brothers received wages and there was no fixed rate of pay, but each had a drawing account. Ross's name was added to the partnership signature card allowing him to write checks on the Pulliam Construction account.

In November 1971, Ross moved into the house on the farm property where Jim lived. Ross married in December 1974, and he and his wife lived there until they were divorced in June, 1981. During this time everything Ross and his wife needed was provided by the partnership. Ross worked his last construction shift in May 1977, and became involved in various unsuccessful business enterprises.

Ross filed a complaint in May 1981, alleging his brothers had excluded him from the partnership business and demanded, among other things, the partnership be dissolved and an accounting be had. After a bench trial, the court found that Ross was not a partner in Pulliam Construction and was not entitled to the relief sought. He appeals.

Findings of Fact of the District Court will not be set aside unless they are clearly erroneous. Rule 52(a) M.R.Civ.P. Nor will,

> [t]his Court . . . substitute its judgment for that of the trier of fact. We will consider only whether substantial credible evidence supports the findings and conclusions. Findings will not be overturned unless there is a clear preponderance of evidence against them, recognizing that evidence may be weak or conflicting, yet still support the findings.

Round v. Reikofski (Mont. 1985), 699 P.2d 72, 74, 42 St.Rep. 634, 636.

Therefore, the only question before us here is whether there is substantial evidence to support the District Court's findings that a partnership did not exist between Ross and his two brothers.

Under § 35-10-201(1), MCA, "[a] partnership is an association of two or more persons to carry on as co-owners a business for profit." We have set forth the elements necessary to establish a partnership in Bender v. Bender (1965), 144 Mont 470, 480, 397 P.2d 957, 962:

> [I]t is necessary to determine the intent of the parties; . . . There must be some contribution by each co-adventurer or partner of something promotive of the enterprise. There must be a joint proprietary interest and a right of mutual control over the subject matter of the enterprise or over the property engaged therein, and there must be an agreement to share the profits.

See also First National Bank of Twin Bridges v. Sant (1973), 161 Mont. 376, 506 P.2d 835.

Ross argues at least five indicia indicate that he was an equal partner: (1) the bank card signed by all three brothers; (2) the Pulliam Construction ledgers which enumerate a separate drawing account for each brother; (3) the partnership K-1 tax returns for the years 1974-1978 which are signed by each brother and which list Ross as an equal partner for purposes of sharing profits and losses; (4) the failure of Pulliam Construction to take any tax, accounting or record keeping steps which would indicate Ross was an employee, independent contractor or joint venturer; and (5) the absence of any time record for all three

4

brothers which bears any correlation to hourly rate or to the amounts actually withdrawn from Pulliam Construction's funds.

None of these, however, meets the test set out in Bender, supra, nor the statutory rules determining rights and duties of partners pursuant to § 35-10-401, MCA.

"No person can become a member of a partnership without the consent of all the partners." Section 35-10-401(7), MCA. Further, the intention of the parties must be clearly manifested. Bender, supra at 480, 397 P.2d at 962. The record shows no such manifestation. The only witness to testify there was an intention to form a partnership was Ross himself.

The two witnesses produced by Ross in his case-in-chief did nothing to support his partnership claims. They were fellow workers who testified that Ross had never said he was an equal partner. One of the witnesses assumed he was a partner, but had not been told so. Jim and Fred's denial of intention was corroborated by other witnesses.

Regardless of intention, there are certain acts which result in a partnership, or which negate the intention of the parties.

> Superimposed upon the rule of intent, it is frequently held that where there is no express agreement to form a partnership, the question of whether such a relationship exists must be gathered from the conduct, surrounding circumstances and the transactions between the parties. [Citations omitted.] There is no automatic solution to the question of the existence of a partnership but it turns upon the facts and circumstances of association between the parties. [Citations omitted.] No single fact may be stated as the complete and final test of a partnership. [Citations omitted.] Even a written agreement, designating the partners as partners and providing for a

> sharing of the profits, is only
> evidential and not conclusive of the
> existence of a partnership.

P & M Cattle Co. v. Holler (Wyo. 1977), 559 P.2d 1019, 1022.

In Truck Insurance Exchange v. Industrial Indemnity Co. (Mont. 1984), 688 P.2d 1243, 41 St.Rep. 1835, we found the acts of the parties created a partnership in fact, and contrary intentions of the parties were ignored. By splitting the net profits equally, the parties established a prima facie case of partnership under § 35-10-401(1), MCA. In this case, where there is conflicting evidence the parties intended to form a partnership, the actions of the parties to the contrary defeats any inference a partnership existed.

We find no evidence of an agreement to share the profits. The money which Ross was entitled to draw for his living expenses were as wages of an employee.

> The receipt by a person of a share of the
> profits of a business is prima facie
> evidence that such a person is a partner
> in the business, but no such inference
> shall be drawn if such profits were
> received in payment:
>
> (a) . . .
>
> (b) as wages of an employee . . .

Section 35-10-202(4), MCA.

There is no evidence Ross contributed anything promotive of the enterprise, or that he had a proprietary interest or a right of control. As noted above, he had no business or building experience when be began working, owned no tools or equipment, had no special skills, and no money to contribute to the partnership business. He relied upon Jim and Fred to make all business decisions. He did not handle arrangements with subcontractors. Fred and Jim bought and

6

sold numerous pieces of property during the time he was associated with them and his name never appeared on any of the documents of conveyance. He never dealt with any financial institution concerning the partnership loans.

The District Court correctly found:

> [t]here is conflicting testimony as to the intention to form a partnership, however the court hereby finds that there was no contribution by Ross Pulliam of something promotive of the partnership enterprise, that Ross Pulliam had no joint proprietary interest in or right of mutual control over the Pulliam Construction business enterprise or its assets, and that tax wise Ross Pulliam received a share of the net profits and losses of Pulliam Construction as payment as wages of an employee. That Ross was an employee of Pulliam Construction and upon termination of his employment was to be paid wages, less draws, and living expenses as set forth in paragraph XVII above.

The decision of the District Court is affirmed.

John Conway Harrison
Justice

We Concur:

K. C. Dahlbrandon

John C. Sheehy

William E. Hunt Sr.
Justices