No. 88-260

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

ROBERT L. ANTONICK,

        Plaintiff and Appellant,

  -vs-

GORDON B. JONES,

        Defendant and Respondent.

APPEAL FROM:  District Court of the First Judicial District,
In and for the County of Lewis & Clark,
The Honorable Thomas Honzel, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Patrick F. Hooks; Hooks & Budewitz, Townsend, Montana

    For Respondent:

        Cordell Johnson; Gough, Shanahan, Johnson & Waterman,
Helena, Montana

Submitted: Jan. 19, 1989

Decided: February 28, 1989

_____
Clerk

Filed

FILED

'89 FEB 28 AM 10 53

ED SMITH, CLERK
MONTANA SUPREME COURT

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

This is an appeal by plaintiff and appellant, Robert L. Antonick from a judgment in favor of defendant and respondent, Gordon B. Jones. The District Court for the First Judicial District, Lewis and Clark County, found that no partnership existed between Mr. Antonick and Mr. Jones. The court ruled in favor of Mr. Jones on his counterclaim alleging that Mr. Antonick must repay certain amounts of money which he had drawn from the checking account, and also money which he accepted from patients after the relationship was terminated. The District Court also found that Mr. Antonick did not fraudulently issue four "paid in full" receipts to certain patients. From this judgment Mr. Antonick appeals, and Mr. Jones cross-appeals on the issue of fraud. We affirm.

The issues are:

1. Did the District Court err in concluding that no partnership existed?

2. Did the District Court err in concluding that Mr. Jones is entitled to reimbursement by Mr. Antonick?

3. Did the District Court err in concluding that Mr. Antonick did not fraudulently issue paid in full receipts?

Mr. Antonick and Mr. Jones are physical therapists who have known each other since high school. In 1959 Mr. Antonick began the physical therapy department at St. Peter's Hospital in Helena, Montana. Mr. Jones began his practice in Butte, Montana, at Butte Community Hospital.

In the early 1960's Mr. Jones moved to Helena and the two men formed a partnership for a short time. Mr. Antonick operated the physical therapy department at St. Peter's Hospital and Mr. Jones operated the physical therapy department at St. John's Hospital. They paid expenses, then split

2

the profits. This partnership was amicably terminated after less than a year.

Beginning in 1973 Mr. Jones operated the Shodair Hospital Physical Therapy Department (Shodair) in Helena, Montana, on a contract basis. He received 65% of the total business billed out of that department. Shodair furnished the space, most of the equipment, and office personnel.

Mr. Antonick had been operating St. Peter's physical therapy department. In 1973 he bought a ranch near Townsend, Montana, and moved to Townsend. He commuted to Helena and worked at St. Peter's until 1980, when he quit, intending to retire. However, in less than a year he began doing part-time physical therapy work in Townsend.

In the spring of 1982, Mr. Antonick began working for Mr. Jones at Shodair on a contract basis. Initially, he worked for Mr. Jones three afternoons a week, but increased this to five afternoons a week while maintaining a morning physical therapy practice in Townsend. Mr. Antonick was paid a base amount calculated at six patients times the charge for a patient visit. The amount he received varied from $2860 to $3660 per month.

In the fall of 1983, Shodair decided to change the operation of its physical therapy department so that it would no longer be a department of Shodair. Mr. Jones separated from Shodair and began merely leasing space and equipment from Shodair. Mr. Jones signed a lease with Shodair, and became responsible for billing his own patients. On November 1, 1983, the arrangement essentially became a private practice. Mr. Antonick continued to work at this office under the new arrangement.

Following the change on November 1, 1983, Mr. Jones opened a new checking account for the business. None of the funds from his former checking account were transferred to

3

the new account. While opening the account, a bank employee, Linda Opie, filled out a signature card. The card was for "Physical Therapy and Rehabilitative Services," and the square for partnership was marked with an "X". Linda Opie testified that she normally fills out a card based on information given by the customer, but she did not remember what occurred in this case. Mr. Jones testified that he did not tell Linda Opie to mark the partnership square. Ms. Opie testified that in opening an account for a partnership, a partnership form would be filled out; however, none was found in the bank files. Four people were authorized to sign checks on this new account: Mr. Jones and his wife, and Mr. Antonick and his wife.

Mr. Jones also established a line of credit with the bank up to $25,000, upon which $17,000 was actually drawn. Mr. Jones was personally liable on this loan. Mr. Jones dealt with the bank president, Dan Johnson, who testified that he dealt with Mr. Jones as an individual and that the bank regarded the transaction as one with a sole proprietorship. Mr. Johnson testified that a partnership financial statement and financial statements from each partner would be required to transact business with a partnership.

The physical therapy practice was renamed "Physical Therapy and Rehabilitative Services" (PTRS) and all of the paperwork, including checks, forms, office stamps, and stationary bore the title "Physical Therapy and Rehabilitative Services, Gordon B. Jones, L.P.T. - Robert L. Antonick, L.P.T."

During the entire time that the two men worked together, from 1982 through February 1986, partnership income tax returns were never prepared nor filed. No partnership income was ever reported on a K-1 form. Mr. Antonick filed an individual income tax return for these years, including a

4

Schedule C, which is for a sole proprietor. Mr. Jones issued to Mr. Antonick a form 1099 for each of the years 1982, 1983, 1984, and 1985. Form 1099 is issued to an independent contractor, showing the amounts paid in compensation on a contract basis.

Workers' compensation insurance carried on PTRS employees listed both Mr. Jones and Mr. Antonick as insureds. In 1985 Mr. Antonick filled out a professional liability insurance policy. He listed himself as self-employed, and did not mark the space for partnership. When Mr. Jones filled out a similar application he described himself as a self-employed individual. He listed four physiotherapists as employees and one physiotherapist as an independent contractor.

Mr. Jones testified that he orally agreed to pay Mr. Antonick $3000 per month under the new arrangement. Mr. Antonick drew a total of $40,000 from PTRS in 1984. For the year of 1985, Mr. Antonick's compensation was $59,350. Mr. Jones testified that at the beginning of 1985, when Mr. Antonick requested a raise to $60,000 per year, he simply agreed. Mr. Antonick denies this conversation. In each of the years 1984 and 1985, the amounts drawn from month to month varied.

In August, 1985, Mr. Jones incorporated, becoming a professional corporation. At that point he offered Mr. Antonick an employment agreement. Later, he had a similar agreement prepared by an attorney. In regard to these offers Mr. Jones testified that he wanted Mr. Antonick to join the practice full-time. However, Mr. Antonick did not sign either of these agreements.

In January 1986, Mr. Antonick wrote four checks to himself for a total amount of $21,259. He filled out the check stubs calling the payments "contract payment," "bonus," and "bonus." One check stub was left blank. When Mr. Jones

5

learned of these checks in early February, the parties terminated their relationship.

I

Did the District Court err in concluding that no partnership existed?

The standard of review on appeal is whether the district court findings are clearly erroneous. Rule 52(a), M.R.Civ.P. "If there is substantial credible evidence to support the findings, those findings are not clearly erroneous." Parker v. Elder (1988), 758 P.2d 292, 293, 45 St.Rep. 1305, 1307. We have examined the record and conclude that the determinations of the District Court are supported by substantial credible evidence. We therefore affirm each District Court ruling.

A partnership is defined in § 35-10-201(1), MCA, as "an association of two or more persons to carry on as co-owners a business for profit." This Court previously stated the elements necessary to establish a partnership in Bender v. Bender (1965), 144 Mont. 470, 480, 397 P.2d 957, 962:

> To establish joint venture or a partnership, it is necessary to determine the intent of the parties; such business relationships arise only when the parties intend to associate themselves as such. There must be some contribution by each co-adventurer or partner of something promotive of the enterprise. There must be a joint proprietary interest and a right of mutual control over the subject matter of the enterprise or over the property engaged therein, and there must be an agreement to share the profits. The intention of the parties has to be clearly manifested, and must be ascertained from all the facts and circumstances and the actions and conduct of the parties. (Citations omitted.)

6

These elements were recently reiterated in In the Matter of the Estate of Wilbur Edward Smith (1988), 749 P.2d 512, 515, 45 St.Rep. 93, 98. In that case we also stated:

> The burden of establishing a partnership is upon the person claiming a partnership exists. First National Bank of Twin Bridges v. Sant (1973), 161 Mont. 376, 386, 506 P.2d 835, 841. No person can become a partner without the consent of all partners. Section 35-10-401(7), MCA; Pulliam v. Pulliam (Mont. 1987), 733 P.2d 1299, 1300, 44 St.Rep. 483, 485. The existence of a partnership depends upon the intention of the parties. Intent must be ascertained from all the facts, circumstances, actions and conduct of the parties. Gaspar v. Buckingham (1944), 116 Mont. 236, 246, 153 P.2d 892, 896.

749 P.2d at 515.

The initial test of whether a partnership exists is the intent of the parties. Bender, 397 P.2d at 962. This inherently implies a mutual agreement or meeting of the minds. In this case there was never a written partnership agreement, and there was conflicting testimony on whether there was ever an oral agreement to form a partnership. Mr. Antonick testified that on or about November 1, 1983, they agreed to form a partnership wherein Mr. Antonick would be paid $36,000 a year and Mr. Jones would be paid $72,000 per year, and that after all expenses were paid, whatever profit remained would be split 50/50. The difference in salaries reflected the fact that Mr. Antonick worked half days. Mr. Jones acknowledges that Mr. Antonick made this proposal but denies that he agreed to it. It is the task of the trial court to resolve any conflicts in testimony. Bender, 397 P.2d at 962. In this case there is substantial credible evidence to support a finding that there was no mutual agreement to form a partnership.

However, this does not end the inquiry since a court may find that a partnership was formed, although both parties deny that they intended such a relationship. In Truck Ins. Exchange v. Industrial Indemnity Co. (1984), 212 Mont. 297, 300, 688 P.2d 1243, 1244-45, this Court found that a partnership existed, stating:

> "[i]f the facts bring the arrangement within the definition of a partnership, the parties cannot escape liability incident to that relationship merely by saying that no such thing exists." Simons v. Northern Pac, Ry. Co. (1933), 94 Mont. 355, 369, 22 P.2d 609, 614. If the intended action of the parties creates a partnership in fact, what the parties call their arrangement or intend their arrangement to be is irrelevant.

Thus we must examine the intended action of the parties to determine if the elements of the Bender test are fulfilled.

Mr. Antonick contends that a partnership came into existence on November 1, 1983. He bases this contention on several changes which occurred at that time. A new bank account was opened on which Mr. Antonick was authorized to sign. The bank card designated the account as a partnership. The name of the business was changed to "Physical Therapy and Rehabilitative Services, Gordon B. Jones, L.P.T. - Robert L. Antonick, L.P.T." All paperwork generated by the business bore this designation.

Mr. Antonick contends that the element of mutual control was met, citing various instances in which he participated in hiring discussions and other business decisions. Mr. Antonick specifically calls attention to his participation in discussions involving a business records system, and his unilateral decision to purchase an office computer. He refers to his involvement in having a therapy pool modified.

8

He points out that he helped Mr. Jones search for new office space when expansion was being considered.

There is, however, conflicting evidence on the issue of joint proprietary interest and right of mutual control. The evidence demonstrated that Shodair dealt exclusively with Mr. Jones. Mr. Jones alone negotiated and signed the lease for the facility. Mr. Jones was purchasing equipment from Shodair. Additionally, First Bank dealt exclusively with Mr. Jones. The bank president, Dan Johnson, testified that he dealt with and loaned money to Mr. Jones as a sole proprietor. He testified that if he had considered the business a partnership he would have required a financial statement from each partner and from the partnership. Testimony from PTRS employees revealed that without exception they considered Mr. Jones to be the owner of the business. There was evidence presented indicating that Mr. Antonick did not have mutual control over hiring and firing decisions.

While Mr. Antonick did participate in some discussions and decisions regarding the physical therapy practice, the District Court found that the evidence as a whole did not establish a mutual proprietary interest or a right of mutual control. We conclude that there is substantial credible evidence to support this finding.

Mr. Antonick also contends that while he did not make a monetary contribution to the partnership, he did contribute something "promotive of the enterprise" in that he contributed his reputation and experience to the enterprise. While we note that a contribution to the enterprise need not be monetary, the District Court properly considered this factor and found that this element of the Bender test was not satisfied.

9

Mr. Antonick contends that the compensation he received is prima facie evidence that a partnership existed. He bases this contention on § 35-10-202(4), MCA:

The receipt by a person of a share of the profits of a business is prima facie evidence that such person is a partner in the business, but no such inference shall be drawn if such profits were received in payment:

. . .

(b) as wages of an employee or rent to a landlord;

Mr. Antonick contends first, that there was a sharing of profits, and second, that unless these monies were paid as "wages of an employee," that it is prima facie evidence of a partnership. Mr. Antonick contends that payments made to an independent contractor cannot fall under this exception. Because of our following discussion on the significance of sharing of profits, we do not find it necessary to rule on this contention.

The evidence is conflicting and close as to whether there actually was a sharing of profits. Mr. Jones testified that Mr. Antonick was entitled to a certain sum each month and that he had never agreed to split the profits with Mr. Antonick. However, Julie Curd, a Helena CPA, testified that in her opinion Mr. Antonick and Mr. Jones were sharing the profits of the business. Ms. Curd based this opinion on her study of the financial records of PTRS in which she summarized and compared Mr. Antonick's monthly draws and the monthly bank balances. She found that Mr. Antonick's draws were made in relation to the balance in the bank account. There was also testimony by Mr. Jones that the normal practice at month's end was to pay all employees and part-time

10

therapists before either Mr. Jones or Mr. Antonick took their draws.

At the end of 1984, Mr. Antonick showed Mr. Jones the amounts each had drawn for the year and proposed settling their accounts according to the proposed salaries of $36,000 and $72,000, and a splitting of the remaining profits. Mr. Jones did not agree with Mr. Antonick's proposal or figures, but said he would get back to him. Mr. Jones testified that he did not get back to him.

The amounts of each party's draws cannot be reconciled with either party's theory. In 1984 Mr. Antonick drew a total of $40,000 from the business account, and Mr. Jones took $98,648. In 1985 their total amounts drawn for the year were $59,350 and $156,643, respectively. The record indicates no attempt to pay Mr. Jones twice the amount paid to Mr. Antonick. There were irregular monthly payments to Mr. Antonick, not identical in amount, and a year-end total not consistent with the claimed agreement. However, Mr. Antonick's total annual draws for each year are not exactly the $36,000 or $60,000 which he should have received as an independent contractor. The monthly payments and year-end totals do not clearly reveal any definite compensation arrangement.

The record also indicates that the way in which Mr. Antonick was compensated did not change after November 1, 1983. It is undisputed that Mr. Antonick was compensated as an independent contractor prior to November 1, 1983. That history is relevant to a determination of whether he was an independent contractor.

The evidence on whether the parties were actually sharing profits is therefore conflicting, and the trial court did not make a specific finding on this issue. However, even if the parties were sharing profits, this is not conclusive

11

evidence of a partnership relationship. Prima facie evidence only means that a party has met an initial burden; that evidence would not be dispositive of the partnership issue. Resolution of the present case required a review of all the facts and circumstances surrounding the disputed relationship. The District Court considered detailed and comprehensive evidence on all aspects of the business arrangement. The ultimate finding was that Mr. Antonick failed to establish by a preponderance of the evidence that a partnership existed.

We hold that there was substantial credible evidence to support the District Court's finding that no partnership was created. Mr. Antonick concedes that if this Court affirms the finding that no partnership existed, then he is not entitled to keep the money which he received from patients after the relationship was terminated. We affirm the District Court on these two judgments.

## II

Did the District Court err in concluding that Mr. Jones is entitled to reimbursement by Mr. Antonick?

Mr. Antonick contends that the District Court erred in finding that Mr. Jones is entitled to reimbursement from Mr. Antonick in the sum of $16,259. Mr. Antonick wrote four checks to himself in January 1985, totaling $21,259. The court found that as an independent contractor, Mr. Antonick was entitled to keep $5000 of that sum for services rendered in January. Because we agree with the lower court's finding that no partnership existed, and because there is substantial credible evidence to support the finding that Mr. Antonick was to be paid $5000 per month, we affirm the District Court's judgment on this issue.

12

## III

Did the District Court err in concluding that Mr. Antonick did not fraudulently issue paid in full receipts?

In May, 1986, Mr. Antonick wrote "paid in full" on the billing statements of four patients whom he had treated while he was associated with Mr. Jones. Mr. Jones contends that Mr. Antonick did this fraudulently and deceitfully, citing VanEttinger v. Pappin (1978), 180 Mont. 1, 588 P.2d 988 and § 27-1-712, MCA.

Both Mr. Jones and Mr. Antonick testified that at times each had done "pro bono" work for certain patients. Mr. Antonick testified that when he wrote "paid in full" on the statements, he received no money. He testified that he had a prior arrangement with one patient to accept insurance only in payment. He testified that the other patients were unable to pay their accounts and that it had always been his practice to "absorb" bills which patients were unable to pay.

The District Court found that the giving of these receipts failed to fulfill the elements of fraud. Substantial evidence supports that finding. We hold that the District Court did not err in this determination. Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

13

_William E. Hunt Sr_

_L.C. Gulbrandson_

_John C. Sheehy_
_____
Justices