No. 95-516

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997

MacARTHUR COMPANY, a Minnesota Corporation,

Plaintiff and Respondent,

v.

KARL STEIN, individually and d/b/a MIDLAND
ROOFING AND MIDLAND ROOFING AND GUTTERS;
JOHN DOES 1-2, individually and d/b/a
MIDLAND ROOFING AND GUTTERS,

Defendants and Appellants.

APPEAL FROM:   District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Hon. Maurice R. Colberg, Jr., Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Jock B. West; West, Patten, Bekkedahl
& Green; Billings, Montana

For Respondent:

Michael K. Rapkoch; Felt, Martin, Frazier
& Nelson; Billings, Montana

Submitted on Briefs: December 12, 1996

Decided: March 25, 1997
Filed:

_____
Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

MacArthur Company filed a complaint in the District Court for the Thirteenth Judicial District in Yellowstone County in which it alleged that Karl Stein, Midland Roofing, Midland Roofing and Gutters, and John Does 1 and 2 were jointly and severally liable for an outstanding debt for roofing materials supplied by MacArthur to Midland Roofing and Gutters.  Following a nonjury trial held on January 11, 1995, the District Court concluded that Stein was a partner in Midland Roofing and Gutters at the time the debt to MacArthur was incurred.  The District Court therefore concluded that pursuant to  35-10-307, MCA, Stein was liable to MacArthur for the amount of $39,875.27, plus interest and attorney fees.  Stein appeals from the judgment of the District Court.  We affirm the District Court.

On appeal, we address the issue of whether the District Court erred when it concluded that Karl Stein was a partner in Midland Roofing and Gutters and was therefore liable for the partnership's debt to MacArthur Company.

FACTUAL BACKGROUND

Karl Stein has operated Midland Roofing in Billings since 1974. Prior to July 1991, Midland Roofing was a sole proprietorship owned solely by Stein.

In the summer of 1991, several hail storms occurred in the Billings area.  As a result, the demand for roofing services increased significantly in the late summer and fall of 1991.  Stein recognized an opportunity to increase his profits because of the sudden demand for roofing services.  He sought to take advantage of the business opportunity by seeking a line of credit at a local financial institution, but was unable to secure financing.

John L. Potter and Jesse Beebe approached Stein in late June or early July 1991 with the idea of expanding Stein's business to take advantage of the increase in roofing demand.  Both Potter and Beebe were out-of-state businessmen who engaged in "storm tracking"--the business of traveling to areas where there was increased roofing activity due to storm damage.  In early negotiations, Potter asserted that he could handle the general operation of a roofing business and that a third party, Bill Evans,

could handle sales and material acquisition. In addition, Beebe represented that he had the ability to secure credit for the expanded business.

In early July, the parties entered into an agreement, some of which was in writing and some of which was not, but which was confirmed by subsequent actions of the parties. Pursuant to the agreement, Stein, Beebe, and Potter agreed to create a new entity which would operate under the name of Midland Roofing and Gutters. The parties expressly intended that the business name would be so similar to Stein's business name, Midland Roofing, that the public and customers would be unable to distinguish between the two businesses. In addition, both Midland Roofing and the new entity, Midland Roofing and Gutters, were to use the same telephone number and all calls to that number were to be answered by employees of Midland Roofing and Gutters. The parties agreed that a record would be made of all telephone calls and that Stein would be given a first right to accept any potential roofing job. Midland Roofing and Gutters had the option to complete any other jobs.

As part of the parties' initial written agreement, Stein's compensation was equal to three percent of total gross charges for all "nail-on roofing" jobs and ten percent of gross charges for "hot roofing" jobs performed by Midland Roofing and Gutters. Midland Roofing and Gutters also agreed to pay one of Stein's employees a portion of his salary for inspection work and to set aside $.50 per roofing square to be set up in a two-signature account, which would bear the signatures of Stein and Beebe, to cover any warranty work necessary after Midland Roofing and Gutters ceased operation.

In August 1991, Jesse Beebe arranged a line of credit for Midland Roofing and Gutters from MacArthur Company. Stein had previously been denied credit by the company. His purchases from MacArthur were on a "cash only" basis. On the credit application, Beebe listed Midland Roofing and Gutters as the company seeking credit, and named himself as the "principal or officer." Neither Stein nor Midland Roofing was mentioned on the credit application, and MacArthur was not advised of Stein's association with Midland Roofing and Gutters. Based solely on Beebe's credit references, MacArthur granted Midland Roofing and Gutters a line of credit and supplied the company with materials from August 1991 through January 1992.

In January 1992, Jesse Beebe, John Potter, and Bill Evans departed the Billings area without notice, and left an unpaid balance to MacArthur Company in the amount of $39,875.27. On May 12, 1994, MacArthur Company filed a complaint in the Thirteenth Judicial District Court in Yellowstone County against Karl Stein, Midland Roofing, Midland Roofing and Gutters, and John Does 1 and 2. MacArthur alleged that each of the defendants, as partners in Midland Roofing and Gutters, was jointly and severally liable for

the outstanding debt to MacArthur.

Following a hearing on January 11, 1995, the District Court concluded that Stein was a partner of Midland Roofing and Gutters at the time the debt to MacArthur was incurred. The District Court therefore concluded that, pursuant to 35-10-307, MCA, Stein was "jointly liable for all . . . debts and obligations of the partnership." Based on its conclusions, the court ordered Stein to pay $39,875.27, plus interest and attorney fees, for the debt owed to MacArthur by Midland Roofing and Gutters.

DISCUSSION

The issue in this case is whether the District Court erred when it concluded that Karl Stein was a partner in Midland Roofing and Gutters and was therefore liable for the partnership's debt to MacArthur Company.

Our review of a district court's order is two-fold. We review a district court's findings of fact to determine whether the court's findings are clearly erroneous. Daines v. Knight (1995), 269 Mont. 320, 324, 888 P.2d 904, 906. We review a district court's conclusions of law to determine whether they are correct. Carbon County v. Union Reserve Coal Co. (1995), 271 Mont. 459, 469, 898 P.2d 680, 686.

Section 35-10-201(1), MCA (1991), defines a partnership as "an association of two or more persons to carry on as co-owners a business for profit." Section 35-10-202, MCA (1991), provides:

In determining whether a partnership exists, these rules shall apply:

(1) Except as provided by 35-10-308 persons who are not partners as to each other are not partners as to third persons.

(2) Joint tenancy, tenancy in common, tenancy by the entireties, joint property, common property, or part ownership does not of itself establish a partnership, whether such co-owners do or do not share any profits made by the use of the property.

(3) The sharing of gross returns does not of itself establish a partnership, whether or not the persons sharing them have a joint or common right or interest in any property from which the returns are derived.

(4) The receipt by a person of a share of the profits of a business is prima facie evidence that such person is a partner in the business, but no such inference shall be drawn if such profits were received in payment:

(a) as a debt by installments or otherwise;

(b) as wages of an employee or rent to a landlord;

(c) as an annuity to a surviving spouse or representative of a deceased partner;

(d) as interest on a loan, though the amount of

payment varies with the profits of the business;
(e) as the consideration for the sale of a goodwill
of a business or other property by installments or
otherwise.

This Court established the elements for the determination of the existence of a partnership in Bender v. Bender (1965), 144 Mont. 470, 480, 397 P.2d 957, 962: (1) the parties must clearly manifest their intent to associate themselves as a partnership; (2) each party must contribute something that promotes the enterprise; (3) each party must have a right of mutual control over the subject matter of the enterprise; and (4) the parties must agree to share the profits of the enterprise. We have consistently held that each of the four Bender requirements must be established in order to prove the existence of a partnership. See, e.g., Weingart v. C & W Taylor Partnership (1991), 248 Mont. 76, 79, 809 P.2d 576, 578; Montana Bank of Red Lodge v. Lightfield (1989), 237 Mont. 41, 45, 771 P.2d 571, 574; Antonick v. Jones (1989), 236 Mont. 279, 283, 769 P.2d 1240, 1242; In re Estate of Smith (1988), 230 Mont. 140, 145, 749 P.2d 512, 515.

In this case, the District Court analyzed the alleged partnership of Stein, Beebe, Potter, and Evans pursuant to both 35-10-202, MCA (1991), and the elements of partnership set forth in Bender. The court found that the parties' actions and conduct were sufficient to establish their intent to associate themselves as a partnership. In addition, the court found that each party had contributed something that promoted Midland Roofing and Gutters, that each had a joint proprietary interest and a right of mutual control over the enterprise, and that each had received a share of the profits of the enterprise. Based on its findings, the court concluded that Stein, Beebe, Potter, and Evans had created a partnership and that that partnership was in existence at the time the debt to MacArthur Company was incurred. The court therefore concluded that, as a partner in Midland Roofing and Gutters, Stein was liable "jointly for all . . . debts and obligations of the partnership," pursuant to 35-10-307, MCA (1991).

The initial test for the determination of whether a partnership exists is the intent of the parties. Antonick, 236 Mont. at 284, 769 P.2d at 1242. At trial, Stein testified that he did not intend to create a partnership through his negotiations with Beebe and Potter. However, as this Court noted in Truck Insurance Exchange v. Industrial Indemnity Co. (1984), 212 Mont. 297, 300, 688 P.2d 1243, 1244-45:

[I]f the facts bring the arrangement within the definition of a partnership, the parties cannot escape liability incident to that relationship merely by saying that no such thing exists. If the intended action of the parties creates a partnership in fact, what the parties

call their arrangement or intend their arrangement to be is irrelevant.

(Citation omitted.) Therefore, where intent cannot be directly ascertained, it must be established from all the facts, circumstances, actions, and conduct of the parties. Antonick, 236 Mont. at 284, 769 P.2d at 1242. In this case, then, it is not necessary that Stein intended to be a partner in Midland Roofing and Gutters; it is only necessary that he intended his actions and that his actions created a partnership in fact.

In this case, the District Court found that, regardless of Stein's intentions, the parties had created a partnership in fact through their actions and conduct. Specifically, the court found that the remaining three elements of Bender--contribution, joint interest and control, and the right to share profits--had been proven and were indicative of the parties' intent to establish a partnership.

Pursuant to Bender, in addition to the requirement of intent, each of the purported partners must contribute something that promotes the enterprise. Bender, 144 Mont. at 480, 397 P.2d at 962. In this case, the District Court found that each of the parties had made a contribution to Midland Roofing and Gutters sufficient to indicate the creation of a partnership. Specifically, the court found that Stein had contributed to Midland Roofing and Gutters the name of his business, his business license, and his goodwill in the community. In addition, the court noted that Stein had agreed to warrant work completed by Midland Roofing and Gutters. The other parties, the court found, had contributed roofing skills, start-up revenue, and sales skills. Based on the substantial contributions of each of the parties, the District Court found that the element of contribution had been established.

The uncontroverted evidence at trial established that Stein lent his business name, his telephone number, his business leads, his good will, his business license, and his expertise to Midland Roofing and Gutters. We hold that such contribution was promotive of the enterprise of Midland Roofing and Gutters. We therefore conclude that the District Court's finding that the element of contribution had been established is supported by substantial, credible evidence and is not clearly erroneous.

A further requirement of Bender is that each party to an enterprise have a joint proprietary interest in, and right of control over the subject matter of the enterprise. Bender, 144 Mont. at 480, 397 P.2d at 962. In this case, the District Court found that Stein did have such interest and control. Specifically, the court found that, pursuant to the parties' agreement, Stein had the right to exercise quality control over the work performed by Midland Roofing and Gutters and, after inspection, could have required that the work conform with his standards. In addition,

the court found that Stein had agreed to perform future warranty work for Midland Roofing and Gutters and had established a joint account for the payment for that work. Finally, the court found that Stein had reserved the right to discontinue the parties' arrangement and prohibit Midland Roofing and Gutters from using his telephone number and business license. Although the court noted that Stein did not specifically hire the employees of Midland Roofing and Gutters or arrange for their work schedule or payment, the court found that "there are sufficient indices of control and proprietary interest to determine that he was in fact a partner."

In addition to the District Court's specific findings regarding Stein's proprietary interest and right of control, the record reflects that Stein was involved in the oversight of the day-to-day workings of Midland Roofing and Gutters. Stein testified at trial that he visited Midland Roofing and Gutter job sites and gave advice on local building code requirements. In addition, Stein testified that he was in the offices of Midland Roofing and Gutters on a daily basis and answered the phones for that entity. Moreover, the evidence presented at trial established that Stein and Midland Roofing and Gutters worked together to contact the general public. This evidence was clearly indicative of Stein's interest in and control of Midland Roofing and Gutters. We therefore hold that the District Court's finding of Stein's right of mutual control and joint proprietary interest is supported by substantial credible evidence and is not clearly erroneous.

The final element of Bender requires that there must be an agreement to share profits in order to establish a partnership. Bender, 144 Mont. at 480, 397 P.2d at 962. In this case, the District Court found that Stein was entitled to receive a percentage of Midland Roofing and Gutters' profit. Specifically, the court noted that both the written agreement formalizing the parties' arrangement and its subsequent modification entitled Stein to a percentage of the gross revenue on all work done by Midland Roofing and Gutters. In addition, the court noted that, according to testimony at trial, Stein earned between $75,000 and $92,000 in both cash and materials from his agreement with Midland Roofing and Gutters. As the District Court correctly stated, "[t]he receipt by a person of a share of the profits of a business is prima facie evidence that such person is a partner in the business." Section 35-10-202(4), MCA (1991). Based on the evidence at trial, which clearly established that Stein was entitled to share the profits of Midland Roofing and Gutters, we hold that the District Court's finding that the final element of Bender had been satisfied is not clearly erroneous.

Because we uphold the District Court's findings regarding the establishment of the four elements of a partnership, we hold that the court's conclusion that Stein, Beebe, Potter, and Evans had created a partnership is correct. The only remaining question,

then, is whether Stein is liable, as a partner, for Midland Roofing and Gutters' debt to MacArthur Company.

Section 35-10-307(2), MCA (1991), provides that "[a]ll partners are liable . . . jointly for all . . . debts and obligations of the partnership."  In this case, because we hold that Stein was a partner in Midland Roofing and Gutters, we further conclude he was jointly liable for the partnership's debt to MacArthur Company.  We do not address the issue of whether that makes him individually liable for the entire partnership debt because that issue has been neither raised nor briefed by the parties.  Furthermore, we reject Stein's contention that he is not liable to MacArthur because MacArthur was not aware of his relationship with Midland Roofing and Gutters when it extended credit to the company.  Reliance is an element of partnership by estoppel; it is not necessary to the establishment of liability of a partner in fact.  Therefore, we hold that the District Court was correct in its conclusion that, pursuant to  35-10-307, MCA (1991), Stein was jointly liable for the partnership's debt to MacArthur Company.

We affirm the judgment of the District Court.

/S/  TERRY N. TRIEWEILER

We Concur:

/S/  J. A.  TURNAGE
/S/  JAMES C. NELSON
/S/  KARLA M. GRAY
/S/  W. WILLIAM LEAPHART