No. 01-899

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 175

CONCERNING THE WAGE CLAIM OF

KATHY J. HARKER,

 Plaintiff and Respondent,

 v.

GAIL A. PETERSON,

 Respondent and Appellant,

 and

DONALD C. PETERSON, d/b/a
BOAR'S BREATH,

 Respondent and Respondent.

APPEAL FROM:    District Court of the Twentieth Judicial District,
                In and for the County of Sanders, Cause No. DV-01-21,
                Honorable Deborah Kim Christopher, Judge Presiding

COUNSEL OF RECORD:

        For Appellant:

            Claude I. Burlingame, Thompson Falls, Montana

        For Respondents:

            (No appearance)

                                        Submitted on Briefs:  May 2, 2002

                                        Decided:  July 1, 2003

Filed:

        _____
                              Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Gail A. Peterson (Gail) appeals the determination of the Twentieth Judicial District Court, Sanders County, that she bears joint and several liability with her ex-husband Donald C. Peterson (Donald) for the unpaid salary, penalties, attorney fees and court costs awarded to Kathy J. Harker (Harker). We reverse.

¶2 The issue on appeal is whether the District Court's conclusion that a partnership existed between Gail and Donald from June 1997 through August 1998 was correct.

### FACTUAL AND PROCEDURAL BACKGROUND

¶3 Gail and Donald married in Alaska in 1984. The couple purchased real property along Highway 200 in Sanders County near the Idaho border in 1994 with the intention of opening a bar, restaurant and casino. They secured an all-beverage liquor license in March 1995, which the State of Montana issued in both of their names. Because the license had been transferred across county lines, Gail and Donald were restricted from selling or transferring the license for five years, under § 16-4-204(1), MCA (1995).

¶4 The Petersons opened the Boar's Breath Bar & Casino (the Boar's Breath) in July 1995. Harker was hired as a prep cook and swamper during the fall of 1995, and after a few months, she began tending bar. When Gail discovered that an intimate relationship had developed between Harker and her husband, she demanded that both Donald and Harker vacate the premises. Gail then operated the Boar's Breath by herself until May 1997.

¶5 Donald and Gail decided to divorce in April 1997. They negotiated a property settlement agreement (the agreement), which they signed on May 6, 1997, and filed with the

2

District Court on June 18, 1997. The agreement provided that although the real and personal property occupied and used by the Boar's Breath was jointly owned by Donald and Gail, Donald would operate the bar and restaurant and receive all profits of the business. Donald also would be responsible for all liabilities generated by the operation of the Boar's Breath. Donald agreed to harvest $150,000 worth of timber on land belonging to Gail and use the money to pay-off the property loans for the bar and restaurant. On March 15, 2000, when the five-year restriction on the transfer of the liquor license expired, the agreement specified that all real and personal property associated with the Boar's Breath would be offered for sale. Either party could exercise a 30-day option to buy-out the other, or, if the assets were sold to a third party, Gail and Donald would split the proceeds.

¶6     Gail ceased any involvement with the day-to-day operation of the Boar's Breath in mid-June 1997. The business was operated by Donald and Harker as a couple, according to the testimony of numerous employees. Donald agreed to pay Harker a salary of $1,400 each month, and Harker agreed to work as many hours as necessary to keep the business open and successful. By late June 1997, Donald experienced financial difficulties and stopped paying Harker's salary; Harker agreed to wait to receive her pay. Harker received no wages from the end of June 1997 through the end of October 1998. Donald paid all employees, except Harker, in cash and failed to report any wages to the state and federal governments for income, social security, unemployment insurance and other taxing purposes or for workers' compensation coverage. When the business's gambling machines were repossessed for lack of payment, Gail was contacted because her name still was included on

the leasing papers. The parties do not dispute that this incident constituted Gail's only involvement with the Boar's Breath from mid-June 1997 through October 31, 1998.

¶7 Gail and Donald divorced on August 26, 1997. The District Court incorporated their May 1997 agreement as part of the formal decree of dissolution over Donald's objection. By stipulation, the parties agreed to retry contested property issues rather than pursue an appeal. After a hearing, the court determined that the May 1997 agreement was conscionable and enforceable. In addition, the court found that "[t]he parties contemplated and agreed that the responsibilities and obligations under the property settlement agreement commenced upon signing the agreement." The court acknowledged that Gail fulfilled her promise to relinquish all control of the Boar's Breath to Donald in June 1997. Donald, on the other hand, failed to uphold his part of the agreement. In particular, the court found that Donald's timber harvest operation on Gail's property did not yield sufficient money to pay-off the couple's property loans. The court's order of August 30, 1998, modified the May 1997 agreement by awarding the heavily encumbered real and personal property associated with the Boar's Breath to Donald and canceling the future sale of the business's assets. The order listed the specific debts and liabilities of the Boar's Breath that were assigned to Donald.

¶8 Donald again appealed and the parties entered settlement negotiations. According to a new agreement reached on October 30, 1998, Gail purchased the assets of the Boar's Breath from Donald for $20,000 and assumed the debts and liabilities listed in the District

4

Court's order of August 30, 1998. In exchange, Donald agreed to release all interest in the property and allow Gail to assume control of the premises on November 2, 1998.

¶9 On November 13, 1998, Harker filed a claim with the Montana Department of Labor and Industry (the Department) for her unremunerated work at the Boar's Breath from late June 1997 through October 1998. Donald supported the claim with a letter acknowledging that the Boar's Breath failed to pay Harker for 18 months and owed her $25,200 in back salary. Gail countered that Harker earned her unpaid salary while Donald controlled the Boar's Breath and that Donald alone was liable.

¶10 The Department's compliance officer determined that Gail and Donald, as partners in the Boar's Breath, were jointly and severally liable for Harker's unpaid wages. Gail appealed. The Department's Hearings Bureau found that Gail's partnership interest in the Boar's Breath terminated on August 30, 1998, when the District Court finalized the property settlement stemming from the dissolution of her marriage with Donald. The Board of Personnel Appeals affirmed and apportioned $29,706 of Harker's unpaid wages and penalties to Gail and Donald, jointly and severally, and $6,099 to Donald, personally. Following this ruling, Donald delivered $3,000 to Harker as partial payment. The District Court again affirmed and directed Gail and Donald to pay Harker's attorney fees and court costs in the amount of $5,101.90. Gail filed an appeal with this Court, which Donald, acting *pro se*, did not join. Neither Harker nor the Department filed respondent briefs.

**STANDARD OF REVIEW**

5

¶11     We review a district court's findings of fact to determine whether the findings are clearly erroneous; we review conclusions of law to determine whether they are correct. *Small v. Board of Trustees, Glacier County School District No. 9*, 2001 MT 181, ¶ 7, 306 Mont. 199, ¶ 7, 31 P.3d 358, ¶ 7 (citing *Baldridge v. Board of Trustees, Rosebud County School Dist. No. 19, Colstrip, Mont.* (1997), 287 Mont. 53, 58, 951 P.2d 1343, 1346).

## DISCUSSION

¶12     The question of whether a partnership exists constitutes a mixed question of fact and law. *In re Estate of Bolinger*, 1998 MT 303, ¶ 28, 292 Mont. 97, ¶ 28, 971 P.2d 767, ¶ 28. Courts must decide as a matter of law what constitutes a partnership, but the determination of whether the evidence in a given case supports the existence of a partnership is a question of fact. *Bollinger,* ¶ 28. When the facts are undisputed or susceptible of only one inference, the question of whether a partnership exists between particular persons is one of law for the court. *Bollinger*, ¶ 28 (citing *Pruitt v. Fetty* (W. Va. 1964), 134 S.E.2d 713, 716.

¶13     The District Court affirmed the findings and conclusions of the Department's hearings officer and the Board of Personnel Appeals.  Gail concurs that all findings are supported by substantial credible evidence, with the single exception of the determination that she and Donald operated the Boar's Breath as a partnership between June 1997 and August 1998. Therefore, the issue before us today is whether the undisputed facts support the existence of a partnership, which is a question of law.

¶14     Section 35-10-202(1), MCA, defines a partnership as "the association of two or more persons to carry on as co-owners a business for profit . . . whether or not the persons intend

6

to create a partnership." The statute also sets forth some explicit rules for determining whether a partnership is created and provides, in pertinent part, that "[j]oint tenancy, tenancy in common, tenancy by the entireties, joint property, common property, or part ownership does not by itself establish a partnership even if the co-owners share profits made by the use of the property." Section 35-10-202(3)(a), MCA. To withdraw from a partnership, § 35-10-616(1), MCA, provides that a partner is dissociated from a partnership "upon receipt by the partnership of notice of the partner's express will to withdraw as a partner or upon any later date specified in the notice."

¶15 The burden of establishing a partnership is upon the person claiming a partnership exists. *Antonick v. Jones* (1989), 236 Mont. 279, 283, 769 P.2d 1240, 1242 (citation omitted). This Court has repeatedly stated that a partnership exists where: (1) the parties clearly manifest their intent to form a partnership; (2) each party contributes something to promote the partnership; (3) each party has a right of mutual control over the subject of the partnership; and (4) there is an agreement among the parties to share the profits of the enterprise. *MacArthur Co. v. Stein* (1997), 282 Mont. 85, 89, 934 P.2d 214, 217. *See also*, *Bolinger*, ¶ 34; *Weingart v. C & W Taylor Partnership* (1991), 248 Mont. 76, 79-80, 809 P.2d 576, 578; *Bender v. Bender* (1965), 144 Mont. 470, 480, 397 P.2d 957, 962. All four requirements must be established to prove the existence of a partnership. *MacArthur Co.,* 282 Mont. at 89, 934 P.2d at 217.

¶16 To reiterate, the District Court found the agreement that Gail and Donald negotiated in anticipation of the dissolution of their marriage to be conscionable, enforceable and

7

effective upon execution on May 6, 1997. The agreement distributed the marital property and delineated the parties' separate financial responsibilities. The terms allotted Donald exclusive control of the Boar's Breath operation and directed that the assets of the business be offered for sale on March 15, 2000, when the restrictions on the transfer of the liquor license expired.

¶17 Gail does not dispute the District Court's finding that she and Donald initially operated the Boar's Breath as a partnership. She contends that the May 1997 agreement that she executed with Donald gave notice of her withdrawal from that partnership and the partnership terminated when she relinquished control of the Boar's Breath to Donald. She argues that the factual findings of the court actually support the conclusion that no partnership existed between mid-June 1997 and August 1998.

¶18 The initial test of whether a partnership exists is the intent of the parties, which implies a mutual agreement or meeting of the minds. The May 1997 agreement acknowledges that the real and personal property of the Boar's Breath would continue to be jointly owned by Gail and Donald. The agreement, however, does not express an intent to carry on the Boar's Breath business as partners. Under the second factor, which requires each party contribute something to promote the partnership, we note that under the agreement terms, the business would occupy and use property that Gail co-owned with Donald until March 15, 2000, at which time the property would be offered for sale. No evidence indicates that the Boar's Breath paid rent to Gail during this interim. Clearly, the rental subsidy served to promote the financial success of the business, which weighs in favor

8

of Gail's participation as a partner. However, the third factor dealing with the right of mutual control countervails. The agreement directed Gail to relinquish all control of the business enterprise to Donald, which she did by mid-June 1997. Finally, under the fourth partnership factor that requires an agreement to share the profits, the May 1997 agreement allotted all profits of the Boar's Breath to Donald. Therefore, we conclude that there is no support for finding a partnership under three of the four criteria after mid-June 1997 when Gail handed over control of the enterprise to Donald, ceased sharing in the profits by agreement and completely disassociated herself from the business.

**CONCLUSION**

¶19     We hold that the partnership between Gail and Donald to carry on the business of the Boar's Breath ended by mid-June 1997. Because Gail was not a business partner, the conclusion that she was Harker's employer between late June 1997 and August 1998 is incorrect as a matter of law. Therefore, Gail bears no liability for Harker's unpaid wages from the Boar's Breath.

¶20     Reversed and remanded to the District Court for further proceeding consistent with this Opinion.

/S/ JIM RICE

We concur:

/S/ JAMES C. NELSON
/S/ PATRICIA COTTER
/S/ JIM REGNIER

9