No. 87-25

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

---

IN THE MATTER OF THE ESTATE OF
WILBUR EDWARD SMITH, Deceased.

---

ROGER H. SMITH,
             Plaintiff and Respondent,

     -vs-

THE ESTATE OF WILBUR E. SMITH, deceased,
HARRIET E. SMITH as Personal Representative
and against HARRIET E. SMITH as an individual;
ROGER WILBUR SMITH and DOUGLAS LANCE SMITH,
             Defendants and Appellants.

---

APPEAL FROM:  District Court of the Eighteenth Judicial District,
              In and for the County of Gallatin,
              The Honorable Thomas A. Olson, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

          H. A. Bolinger argued, Bozeman, Montana
          K. Robert Foster, Bozeman, Montana

     For Respondent:

          Kirwan & Barrett; Stephen M. Barrett argued, Bozeman,
          Montana
          McKinley Anderson, Bozeman, Montana
          Jim Screnar, Bozeman, Montana

---

                         Submitted:  November 10, 1987

                         Decided:  January 15, 1988

Filed JAN 15 1988

*Ethel M. Harrison*
_____
                Clerk

Mr. Chief Justice J. A. Turnage delivered the Opinion of the Court.

Plaintiff and respondent Roger H. Smith brought an action alleging partnership against the estate of Wilbur E. Smith (estate). Following jury trial, the trier-of-fact found that a partnership existed and held that one-half of various ranch and personal property including joint tenancy property belonged to plaintiff Roger H. Smith.

We reverse.

Nine issues are presented for our review. Because we are reversing, we limit our review to the following issue:

Did the District Court err when it denied the estate's motion for a directed verdict on the partnership issue?

Wilbur Smith was born in Bozeman in 1895. At the age of five years, Wilbur was adopted by his deceased mother's sister, Annie Smith, and her husband, Pierre Everich Guanus Smith or "Peg" Smith. Wilbur married Virginia Smith in 1926. In 1928, Wilbur's only child, Roger H. Smith, was born. Wilbur and Virginia divorced in 1936. They remarried in 1942 after signing an antenuptial agreement. Virginia died in 1946.

Wilbur married Harriet Smith in 1949. Harriet had two sons from a previous marriage, Roy and Gordon Boe. Roy is now deceased. Prior to their marriage, Wilbur and Harriet Smith executed an antenuptial agreement.

Wilbur inherited a life estate in the Harry Smith Ranch from his mother, Annie, subject to Roger's remainder interest. The Harry Smith Ranch (HSR) is a 240-acre ranch located within the Bozeman city limits. Wilbur operated HSR as a dairy until 1960. Roger farmed HSR after 1960 and received crops or cash rent as payment. In January 1982, Wilbur conveyed his life interest in HSR to Roger contingent upon Roger conveying half interest to Roger's wife, Rose. Subsequently, Roger subdivided HSR for sale as residential and commercial property.

In 1931, Wilbur inherited the Peg Smith place from his stepfather. The Peg Smith place is a 200-acre ranch located one-half mile west of the Harry Smith Ranch. After his parents' deaths, Wilbur purchased the following properties:

1. Elk Creek Ranch or "Madison" (1920 acres and 2000 acres of state leases) is located approximately thirty-five miles west of Bozeman near the Madison River. Roger Smith lived on Elk Creek Ranch and farmed the property from 1954 through 1960 and from 1973 through 1979.

2. Madison Valley Ranch (900 acres with 1280 acres of state leases) is located a few miles north of Elk Creek Ranch. Madison Valley Ranch was farmed by Elmer Satre and later by Norman Bryson from 1947 until 1979.

3. Harris Ranch (640 acres) was originally leased by Wilbur in 1953 and purchased by him in 1958. At the time of the purchase, Wilbur advised Roger that he would have one-half interest in this ranch. In 1965 Wilbur deeded a one-half interest to Roger. Wilbur devised his one-half interest by will to Roger's son, Roger Wilbur Smith.

4. The Harman Ranch (240 acres) is adjacent on the east to the Harry Smith Ranch and on the west to the Peg Smith Ranch. It was purchased by Wilbur in 1946. Leo Freeland farmed the Harman Ranch on a crop share or cash rent basis. Prior to his death, Wilbur subdivided and sold 80 acres of the Harmon ranch.

5. Summit Valley Ranch (375 acres) was deeded by Wilbur to his first wife, Virginia, in 1936 upon their divorce. Virginia devised her interest by will to Wilbur for life with a remainder to Roger. Roger took possession on Wilbur's death. Howard Hedges farmed the Summit Valley Ranch on a crop share or a cash rent basis.

6. The Norine Building was deeded to Wilbur by Hedley Norine in 1955 as a mortgage to secure a $30,000 loan. Norine periodically borrowed additional money from Wilbur.

Subsequently, Norine released his interest in the building to Wilbur in satisfaction of a debt.

7. The Armstead Ranch was purchased jointly by Wilbur and Carl Richter in 1958. The ranch was sold in 1964.

8. The junkyard consists of about five acres located approximately ten miles west of Bozeman. Wilbur purchased the junkyard in 1963. The contract was not fully paid at Wilbur's death and subsequent payments have been made by the personal representative.

Wilbur's inventory and appraisal listed the following assets:

Real Property

| | |
|---|---|
| Elk Creek Ranch | $333,354 |
| Norine Building | 310,030 |
| Junkyard | 72,911 |
| Beartrap | 18,750 |
| Madison Valley Ranch | 144,750 |
| Harris Place | 46,650 |
| Peg Place | 600,000 |
| Harmon Place | 584,500 |

| | |
|---|---|
| Stocks & Bonds | 109,842 |
| Mortgages, Notes & Cash | 35,402 |
| Jointly-Owned Property (Held in the name of decedent and his spouse, Harriet E. Smith, as joint tenants with right of survivorship) (Taxable interest or one-half) | 260,268 |
| Other Misc. Property | 43,550 |
| Transfers during decedent's life | none |
| Powers of Appointment | none |

Wilbur Smith executed his will on March 18, 1980. Wilbur died on March 21, 1983. Section 9 of Wilbur Smith's will states:

> I have intentionally left no part of my estate or property to my son Roger H. Smith, for the reason that upon my death my life estate will terminate and end in approximately 240 acres of land adjoining the city limits of Bozeman, Montana, and a farm in Madison County south of Cardwell, Montana, so that said lands will be owned free and clear of encumbrances and which have a value in excess of the requirements of he and his wife. [Emphasis added.]

Plaintiff Roger H. Smith was born in 1928. Roger married Rose [maiden name also Smith] in 1948. In 1951 Roger borrowed $3,000 to begin operating as a tenant on the Peg Smith Ranch. Roger was hailed out in August 1951. Roger left Bozeman and lived and worked in Trident, Montana, and later at the Canyon Ferry Dam. Roger also worked as a carpenter in Billings. In 1952 Roger returned to Bozeman because he was out of work due to a union strike. The following year Roger moved to the Harris Ranch. In 1954 Roger moved to the Elk Creek Ranch where he resided until 1960.

In 1960 Roger moved to the Harry Smith Ranch. In 1964, Roger leased the Wellington D. Rankin Ranch near Ringling. He farmed the Rankin property for three or four years.

During the 1960s, Roger and Wilbur formed a company called Northwest Merchandising, which trucked and sold grain, salt and meal for feeding, concentrates, fertilizer, lumber and other goods. Roger testified that Northwest Merchandising was later expanded to include a used automobile and truck dealership. Wilbur Smith financed Northwest Merchandising.

In 1968, Roger formed a partnership with his wife's two brothers, Joseph and Bill Smith. The partnership, called Smith & Smith Construction, built houses and fences. Wilbur financed the company until it was dissolved in 1972.

5

Roger returned to the Elk Creek Ranch in 1973. He continued to farm the Elk Creek property until his retirement in 1979.

Roger and Wilbur also operated a cattle buying and trucking operation. In an intermittent fashion, Roger and Wilbur purchased cattle and subsequently sold the cattle for profit. Wilbur financed nearly all of the cattle purchases.

Except for a brief and unsuccessful attempt at a joint bank account, Wilbur Smith managed all funds. Wilbur was the "banker," receiving and distributing or reinvesting all proceeds and profits.

Roger brought this action demanding:

(1) A determination that an oral contract to make a will existed between Wilbur and Roger and that all estate properties were to be transferred to Roger upon Wilbur's death;

(2) An order determining the will a nullity due to fraud, mistake, undue influence, lack of testamentary capacity or forgery;

(3) A determination that the estate property was held in a constructive or resulting trust;

(4) A determination of the existence of a partnership on the estate properties;

(5) An accounting of the profits and distribution of partnership assets;

(6) A determination of the value of Roger's services to the estate;

(7) An accounting of Wilbur's use of property and proceeds belonging to Roger.

Roger also demanded appointment of a special administrator and that a $1,000,000 bond be posted by the personal representative.

By the close of the plaintiff's case, all issues except partnership had been dismissed. Following presentation of the defense, the District Court submitted a special

6

interrogatory to the jury. The special interrogatory contained questions pertaining to partnership and partnership assets. The jury reviewed nine separate properties as potential partnership property. The jury found that three parcels of real property belonged to the partnership: (1) the Elk Creek Ranch, (2) the Norine Building, and (3) the "junkyard." Additionally, the jury found that one-half of joint tenancy property, held in the names of decedent and his spouse, Harriet E. Smith, as joint tenants with right of survivorship, was partnership property.

Issue

Did the District Court err when it denied the estate's motion for a directed verdict on the partnership issue?

Following presentation of Roger Smith's case, defendant estate moved for a directed verdict on the partnership issue. The District Court denied the estate's motion. The court did, however, grant the estate's motion for a directed verdict that Roger Smith had failed to present sufficient evidence of an oral promise to convey real or personal property.

A partnership is defined in § 35-10-201(1), MCA, as "an association of two or more persons to carry on as co-owners as business for profit." The elements necessary to establish a partnership are found in Bender v. Bender (1965), 144 Mont. 470, 480, 397 P.2d 957, 962:

> To establish . . . a partnership, it is necessary to determine the intent of the parties: such business relationships arise only when the parties intend to associate themselves as such. There must be some contribution by each co-adventurer or partner or something promotive of the enterprise. There must be joint proprietary interest and a right of mutual control over the subject matter of the enterprise or over the property engaged therein, and there must be an agreement to share the profits. [Citations omitted.] The intention of

7

> the parties has to be clearly manifest-
> ed, [citing cases] and must be ascer-
> tained from all the facts and
> circumstances and actions and conduct of
> the parties. [Citations omitted.]

The burden of establishing a partnership is upon the person claiming a partnership exists. First National Bank of Twin Bridges v. Sant (1973), 161 Mont. 376, 386, 506 P.2d 835, 841. No person can become a partner without the consent of all partners. Section 35-10-401(7), MCA; Pulliam v. Pulliam (Mont. 1987), 733 P.2d 1299, 1300, 44 St.Rep. 483, 485. The existence of a partnership depends upon the intention of the parties. Intent must be ascertained from all the facts, circumstances, actions and conduct of the parties. Gaspar v. Buckingham (1944), 116 Mont. 236, 246, 153 P.2d 892, 896.

The estate contends that Roger Smith failed to provide sufficient evidence of (1) commencement of the partnership; (2) intent to form a partnership; (3) an agreement to share profits and losses; and (4) Roger's right to control partnership assets.

Roger Smith contends that ample evidence was presented to support the District Court's denial of the estate's motion for a directed verdict. After careful review of the record, we summarize testimony of the following witnesses. Raymond S. White, former Gallatin County Assessor, testified that he felt Roger and Wilbur were partners.

The estate objected to White's nonexpert opinion on the partnership issue. The District Court, over the estate's objection, allowed White and numerous other lay witnesses to give opinion testimony on the partnership issue.

Roger Smith's next witness, W. W. Lessley, Chief Water Judge of the Montana Water Court, testified that Wilbur Smith was a long-time neighbor and resident of the Harry Smith Ranch. Lessley stated that Wilbur and Roger worked "inter-changeably" on water issues concerning the Harry Smith Ranch.

8

Wilbur owned the Harry Smith Ranch. Roger held a remainder interest in the ranch. Judge Lessley testified that Wilbur and Roger worked together; however, he did not testify that a partnership existed between Wilbur and Roger Smith.

Barbara Chapman, an employee of the Department of State Lands, surface leasing bureau, testified that although Wilbur was the lessee of record, both Wilbur and Roger signed the seed and crop reports required by the State. C. E. Stephenson, an employee of Owenhouse Hardware Company, testified that Roger and Wilbur maintained a mutual charge account at the store. Ken Graber, an outfitter and friend of Roger, testified that in his opinion, Roger and Wilbur were partners. Thomas J. Kamp, owner of Kamp Implement Company in Belgrade, stated that he felt Wilbur and Roger were partners in the Elk Creek Ranch.

R. G. Roberts, Roger's accountant from 1953 through 1969, testified as follows. Roberts felt Roger and Wilbur were partners. Roberts' understanding of a partnership was "a partnership would be two or more people involved, making decisions together and handling the monies together and buying and selling together." However, Roger Smith did not mention to Roberts, Roger's accountant of sixteen years, that he and Wilbur were partners. Further, Roberts testified that no real property or personal property was held as partnership assets and no partnership tax returns were ever filed.

Jack Cain, a long-time friend of Roger's, testified that he, Wilbur and Roger entered into a number of joint ventures, involving automobile parts and salvage. Cain also stated that he felt Wilbur and Roger were partners.

Doug Smith, son of Roger Smith, testified that he also felt Wilbur and Roger were partners. Doug based his testimony on Wilbur and Roger's intermittent cattle purchases. Doug testified that he was very close to his grandfather. However, Doug stated that neither his father Roger nor his grandfather Wilbur ever mentioned that they were partners.

9

Roger testified that he felt he and Wilbur had been partners since 1951. However, Roger did not present evidence that Wilbur intended to enter the partnership. Bender v. Bender, 144 Mont. at 480, 397 P.2d at 962. Neither Roger nor Wilbur ever mentioned "partner" or "partnership" in over thirty years of alleged partnership. Further, Wilbur indicated in his will that he did not feel Roger was entitled to any of the alleged partnership assets.

Roger responds by claiming that his family did not talk about legal relationships such as partnership and transfer of real property ownership. Roger further contends that partnership and transfer of real property ownership was "understood" but unspoken. However, Roger's testimony is not supported by the record and is contradicted by Wilbur's 1965 title transfer of the Harris Place to Roger.

Roger testified that he periodically received monies for working on the Elk Creek Ranch and other property owned by Wilbur. However, with the exception of cattle purchases, Roger did not present evidence that he and Wilbur divided partnership profits and losses. Bender, supra. A review of Wilbur's voluminous business records does not reveal division of profits and losses. Wilbur's business records and Roger's testimony merely show that Roger was employed by Wilbur and that he and Wilbur engaged in a number of joint ventures involving cattle, trucking, and automotive salvage. Section 35-10-202(4), MCA. Clearly, Roger's involvement in the above-mentioned joint ventures did not create a partnership.

Wilbur held legal title to nearly all alleged partnership assets, including real property and state land leases. Roger did not present evidence that he had an equal right of control over these alleged partnership assets. See, Rae v. Cameron (1941), 112 Mont. 159, 169, 114 P.2d 1060, 1064. Additionally, Roger testified that Wilbur financed nearly every joint venture and all real property purchases.

10

Roger also failed to present evidence of an oral or written partnership agreement or substantial credible evidence of an implied partnership agreement. Rae, supra. No partnership name or partnership bank account was established or maintained. No partnership income tax returns were prepared or filed. Both Wilbur and Roger's annual income tax returns showed income and expenses without reference to a partnership. Neither Wilbur or Roger used the words "partner" or "partnership" in any conversation, transaction or financial record. In summary, the record is bare of substantial, credible evidence that would support a jury finding of oral, written or implied partnership. This is especially relevant in light of Wilbur's voluminous and detailed financial records.

Clearly, the evidence presented does not support a finding, as a matter of law, that Roger and Wilbur Smith were engaged in a partnership. Sections 35-10-201 and -202, MCA. See, Bender v. Bender, 144 Mont. at 480, 397 P.2d at 962.

As stated earlier, the District Court, over defendant estate's objection, allowed numerous nonexpert or lay witnesses to express their opinions as to whether they felt Roger and Wilbur Smith were partners or engaged in a partnership. In doing so, the court allowed nonexpert witnesses to state their opinions on the ultimate jury question. Generally, a witness is not permitted to state a conclusion or give an opinion of law. Rule 701, M.R.Evid. Bean v. Diamond Alkali Company (Idaho 1969), 454 P.2d 69, 71. Testimony of nonexpert witnesses is confined to matters of fact, as distinguished from matters of law. Olson v. Coats (Or. 1986), 717 P.2d 176, 178. The District Court is required to instruct on the law, while the trier of fact is required to determine the facts from the evidence presented and draw its conclusions. Sections 26-1-201 and -202, MCA.

The court erred when it allowed, over defendant's objection, nonexpert opinion testimony on the partnership

11

issue.  Defendant was prejudiced when the above-mentioned testimony was repeatedly presented to the jury.  Additionally, defendant was prejudiced because the improper testimony concerned the sole and ultimate jury question.  See, Commission Comments, Rule 704, M.R.Evid.  We hold the nonexpert partnership testimony prejudiced defendant and invaded the province of the jury.

A review of the record reveals that when the improper testimony is excluded, the record is void of substantial credible evidence which might support a finding of partnership.  Accordingly, we vacate the judgment and remand to the District Court with instructions to dismiss.

_____
Chief Justice

We concur:

_____

_____

_____

_____

_____

_____
Justices

12