No. 89-451

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

_____

CLARENCE A. WIBERG,

           Plaintiff and Appellant,

   -vs-

17 BAR, INC., H & H ENTERPRISES, INC.,
aka M & M ENTERPRISES, INC., THOMAS J.
MORROW and VIOLET L. MORROW, husband & wife,
the sole stockholders of said corporations,

           Defendants and Respondents.

_____

APPEAL FROM:  District Court of the Thirteenth Judicial District,
               In and for the County of Yellowstone,
               The Honorable William J. Speare, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

         Robert E. LaFountain, Billings, Montana

     For Respondent:

         Fred E. Work, Jr., Billings, Montana

_____

Submitted on Briefs:  Jan. 4, 1990

Decided:  February 23, 1990

Filed:

_____
                    Clerk

Justice Diane G. Barz delivered the Opinion of the Court.

This appeal arises from an order of the District Court for the Thirteenth Judicial District, Yellowstone County, granting respondents' motion for a directed verdict following presentation of appellant's case in chief. We affirm.

Appellant Clarence Wiberg filed suit on April 24, 1986, seeking rescission of contract, damages for breach of the implied covenant of good faith and fair dealing, punitive damages and specific performance of an alleged oral partnership agreement. Prior to trial, the District Court granted respondents' motion in limine excluding evidence of respondent Violet Morrow's forged endorsement of a check made payable to appellant. Following presentation of appellant's case in chief, the District Court granted respondents' motion for directed verdict.

Appellant's first contention on appeal is that the District Court erroneously granted respondents' motion for directed verdict in light of the existence of factual disputes. District courts properly direct verdicts when the non-moving party fails to establish a prima facie case. Rookhuizen v. Blain's Mobile Home Court, Inc. (Mont. 1989), 767 P.2d 1331, 1334, 46 St.Rep. 139, 143. Nonetheless, in so doing, trial courts must review the evidence in the light most favorable to the non-moving party. Phillip R. Morrow, Inc. v. FBS Insurance Montana-Hoiness LaBar, Inc. (Mont. 1989), 770 P.2d 859, 864, 46 St.Rep. 455, 462.

Appellant Clarence Wiberg read an advertisement in the

2

Billings Gazette seeking a purchaser for the 17 Bar in Billings. The sellers were represented by a realtor. Appellant had previously owned and operated a restaurant in Billings. After operating other businesses and working in other fields, appellant wanted to return to the restaurant business. Respondents Violet and Tom Morrow owned 100% of the stock in the 17 Bar, Inc. Corporate assets included real and personal property and a liquor license. Both the property and the liquor license were encumbered by an underlying contract between Morrows and Kenneth Hannen from whom Morrows had purchased the 17 Bar stock. The terms of this agreement required that Morrows obtain Hannen's permission prior to assignment either of the contract or the corporate assets, including the liquor license.

In an agreement executed June 3, 1985, appellant and respondents agreed upon a $1,000,000 selling price for the 17 Bar and its assets allocated as follows:

| | |
|---|---|
| Land | $ 100,000 |
| Building and Leasehold Improvements | 475,000 |
| Liquor License | 165,000 |
| Covenant not to compete | 15,000 |
| Goodwill | 45,000 |
| Furniture, fixtures and equipment | 200,000 |
| | $1,000,000 |

Appellant agreed to the following terms regarding payment of the purchase price:

1. $100,000 to be paid by closing, including $25,000 earnest money, $25,000 cash on closing date and a $50,000 promissory note secured by a trust indenture on appellant's home;

2. Appellant to assume respondents' $195,582.98 obligation

3

to Hannen at 7% interest, subject to possible increase in interest to at least 9%;

3. The remaining balance of $704,417.02 represented by a promissory note secured by a trust indenture on appellant's home, $10,500 of which was payable within 60 days of closing with the balance payable in graduated monthly installments over a 20-year period.

The agreement further allowed for an increase in the interest rate on the Hannen contract from 7% to 9% or more to facilitate Hannen's consent to the sale. The agreement contained a provision requiring that respondents obtain Hannen's written consent to appellant's assumption of the obligation owed to Hannen. Although the clause operated as a condition precedent to appellant's performance of his duties under the agreement, the parties deleted this provision by crossing it out and initialling the deletion. The closing took place on June 3, 1985.

Appellant began operating the 17 Bar on June 4, 1985. On June 10, 1985, the parties executed an addendum to their previous agreement providing that both would share equally the cost of increased interest on the Hannen contract in excess of 9% and that, through no fault of the respondents, Hannen's consent to the transfer had not yet been obtained. Appellant apparently paid only $52,000 of the one million dollars required by the parties' contract. Appellant paid $25,000 earnest money, $25,000 at closing and $2,000 of the first $10,500 payment due pursuant to the promissory note appellant executed in favor of respondents to

Violet Morrow. Although appellant gave respondents a $50,000 trust indenture on his home, the realtors handling the sale had previously attempted to foreclose on a $50,000 trust indenture given them by appellant. However, appellant testified the equity in his home was worth only $50,000 and there were two prior encumbrances as well.

Appellant filed his completed liquor license application along with respondents' assignment of the 17 Bar license with the Department of Revenue in June of 1985. Appellant testified that the DOR denied his application based upon Hannen's continuing security interest in the license. At trial, appellant offered no documentation of DOR's refusal to transfer the license.

Appellant and respondents executed a release of escrow documents on August 16, 1985. The escrow documents released included a quitclaim deed and a check. Appellant executed the deed at the June 3, 1985, closing and, by authorizing its transfer to respondents transferred all his right, title and interest in the 17 Bar back to respondents. Respondents recorded the quitclaim deed shortly thereafter. A check in the amount of $527.21 was payable to Clarence Wiberg.

The parties gave divergent reasons for, in effect, cancelling their purchase agreement. Appellant alternatively contends the absence of an escrow account prevented him from making payments required by the contract and that respondents' non-performance made him hesitant to fulfill his own obligations. Respondents testified that appellant requested the cancellation because he felt incapable

5

of operating the business successfully.

Respondents permitted appellant to operate the 17 Bar through September 1, 1985, so that he could benefit from the additional income generated at fair time. Appellant's records show the 17 Bar's gross income for June, July and August of 1985 was $89,590.08. Nonetheless, during the period of appellant's management, the 17 Bar suffered a net loss. After September 1, appellant discontinued his operation of the 17 Bar.

Appellant contends he and respondents entered into an oral partnership agreement to operate the 17 Bar until they found a buyer for the business at which time the parties agreed they would split any sale proceeds. Respondents claim that whatever oral agreement the parties may have made, such was barred by the Statute of Frauds because it involved the sale of real property. Appellant testified he advertised the 17 Bar for sale in USA Today and received several responses. These inquiries, introduced into evidence by appellant, were mailed to him in late September. Appellant claims he continued to work at the 17 Bar until ejected from the premises by Violet Morrow in December. Both Morrows testified appellant quit coming into the business in approximately October.

From the vast and murky swamp of pleadings and testimony in this case, we dredge the following contentions. We cast the facts related to appellant's claims in the light most favorable to him. Appellant makes two allegations that permeate the remaining issues. For purposes of brevity, we address these assertions first.

Appellant first contends respondents committed fraud and cites numerous instances of allegedly fraudulent conduct. Respondents misrepresented the availability of Hannen's consent to the transfer of the liquor license and assignment of the obligation owing to him. Respondents led appellant to believe that Hannen's consent was forthcoming. Counsel for respondents advised appellant to use a letter from Hannen's attorney as evidence of Hannen's consent to transfer of the liquor license in appellant's application for the liquor license. Respondents failed to show a copy of their Stock Purchase Agreement with Hannen to appellant. Respondents led appellant to believe the parties had entered into an oral partnership. Although provided for in the contract, no escrow account was ever established at First Interstate Bank. Notwithstanding a contract provision requiring that respondents obtain title insurance in the amount of one million dollars, the actual policy provided coverage only up to $575,000.00.

> Actual fraud, within the meaning of this part, consists in any of the following acts committed by a party to the contract or with his connivance with intent to deceive another party thereto or to induce him to enter into the contract:
>
> (1) the suggestion as a fact of that which is not true by one who does not believe it to be true;
>
> (2) the positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true;
>
> (3) the suppression of that which is true by one having knowledge or belief of the fact;

(4) a promise made without any intention of performing it; or

(5) any other act fitted to deceive.

Section 28-2-405, MCA.

Constructive fraud consists in:

(1) any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault or anyone claiming under him by misleading another to his prejudice or to the prejudice of anyone claiming under him; or

(2) any such act or omission as the law especially declares to be fraudulent, without respect to actual fraud.

Section 28-2-406, MCA.

Furthermore, to recover damages for fraud, plaintiffs must plead and prove the existence of:

1. A representation;

2. Falsity of the representation;

3. Materiality of the representation;

4. Speaker's knowledge of the falsity of the representation or ignorance of its truth;

5. Speaker's intent that it be relied upon;

6. The hearer's ignorance of the falsity of the representation;

7. The hearer's reliance on the representation;

8. The hearer's right to rely on the representation; and

9. Consequent and proximate injury caused by the reliance on the representation.

McGregor v. Mommer (1986), 220 Mont. 98, 105, 714 P.2d 536, 540.

Appellant failed to allege or prove the existence of any duty on the part of respondents or any act or omission considered fraudulent by law. Therefore, appellant failed to establish a prima facie case of constructive fraud.

Although we must view the evidence in the light most favorable to appellant, we are not required to ignore uncontradicted evidence damaging to his case. Appellant first testified that he read none of the documents executed in connection with his purchase of the 17 Bar, then later conceded he had read each document but understood none of them. Appellant does not allege respondents made any assertions which they knew or should have known were untrue. The agreement quite clearly demonstrates the existence of respondents' Stock Purchase Agreement with Hannen. It stated in unequivocal terms that Hannen's consent was necessary prior to assignment of the obligation owed him and transfer of the liquor license. Appellant agreed to the deletion of a provision requiring respondents to obtain Hannen's consent as a condition precedent to any requirement that appellant perform. The addendum executed by all parties on June 10, 1985, clearly set forth the absence of Hannen's consent. Appellant does not allege either a denial of his request to review the Stock Purchase Agreement or that he was misled as to its existence or material terms contained therein.

Appellant alleges no facts showing misconduct by respondents in relation to creation of the escrow account. Appellant offers only the release language in support of his contention that the escrow account was not created thus leading us to conclude his only

knowledge of any defect came upon cancellation of the entire transaction. Appellant has further failed to show his right to rely on the representations of respondents. Appellant is a businessman. He owned and operated several businesses prior to the transaction with respondents and has been in the work force for a number of years. The alleged misstatements made to appellant were easily verified and rectified by him. Appellant testified that respondents had <u>not</u> misled him in regard to his purchase of the 17 Bar. Appellant failed to establish a prima facie case of fraud.

The second pervasive issue concerns the failure of respondents' consideration. Appellant appears to contend respondents' consideration failed because the liquor license was never transferred to appellant. However, appellant does not claim the liquor license would never have been his. There is ample evidence that negotiations between the parties pertinent to obtaining Hannen's consent continued even after closing. Appellant had every reason to believe acquiring Hannen's authorization would be a somewhat lengthy process. Consideration does not fail merely because of delay. Appellant's contention in this regard lacks merit.

At trial, appellant contended that no contract existed between the parties due to the existence of numerous contingencies. The only contingency we ascertain is Hannen's consent to transfer of the liquor license and assignment of the obligation due him, and the related transfer of the liquor license from respondents to appellant. Both parties agree the liquor license transfer did not

10

take place and that Hannen's authorization was not immediately forthcoming. Section 28-2-102, MCA, sets forth the essential elements of a contract:

(1) identifiable parties capable of contracting;

(2) their consent;

(3) a lawful object; and

(4) a sufficient cause or consideration.

The contract between appellant and respondents contains these crucial features. Appellant disputes the existence of consent freely given and sufficient cause or consideration, however, as set forth above, we found these contentions lacked merit. Appellant failed to adequately attack the validity of the contract.

Appellant next maintains respondents breached the contract by their failure to facilitate transfer of the liquor license to him. We disagree. Testimony of both parties shows respondents were negotiating said transfer up until cancellation of the transaction. Respondents at no time indicated the transfer would not take place. The District Court correctly determined that appellants did not set forth facts proving respondents' breach.

Appellant asserts the District Court erroneously refused to rescind the agreement. Pursuant to § 28-2-1711, MCA:

A party to a contract may rescind the same in the following cases only:

(1) if the consent of the party rescinding or of any party jointly contracting with him was given by mistake or obtained through duress, menace, fraud, or undue influence exercised by or with the connivance of the party as to whom he rescinds or of any other party to the contract jointly interested

11

with such party;

> (2)  if, through the fault of the party as to whom he rescinds, the consideration for his obligation fails in whole or in part;

> (3)  if such consideration becomes entirely void from any cause;

> (4)  if such consideration, before it is rendered to him, fails in a material respect from any cause; or

> (5)  if all the other parties consent.

The only allegations made by appellant that would entitle him to rescission are those of fraud and failure of consideration. As elucidated above, these claims are simply not supported by the facts of this case. The District Court did not err in concluding appellant was not entitled to rescission.

Appellant's next specification of error centers around the District Court's failure to find the parties entered into an oral partnership agreement. "A partnership is an association of two or more persons to carry on as co-owners a business for profit." Section 35-10-201, MCA. Appellant asserts the parties agreed to jointly operate the 17 Bar until they located a buyer for the business. Upon sale of the bar, appellant would recover funds he expended while attempting to purchase the business himself.

We previously held that where purported partners did not hold property jointly, had unequal control over assets, held no joint bank accounts and did not file partnership tax returns, no partnership existed. Matter of Estate of Smith (Mont. 1988), 749 P.2d 512, 516-17, 45 St.Rep. 93, 100. Appellant relinquished his interest in the real and personal property by quitclaim deed, he

12

discontinued use of a checking account opened for 17 Bar purposes and testified that his status at the 17 Bar was more akin to that of an employee than a partner. Appellant had the burden of proving the existence of a partnership between himself and Morrows. Smith, 749 P.2d at 515. We hold the evidence of a partnership is insufficient and that the District Court did not err in ruling that no partnership existed.

Appellant next contends the District Court failed to address the issue of respondents' bad faith. Although respondents may well have owed appellant a duty to deal with him fairly and in good faith, in light of our discussion above regarding appellant's allegations of fraud, we find the District Court did not err in directing a verdict denying appellant recovery for respondents' bad faith based on the absence of any breach of duty.

Appellant's final specification of error concerns the exclusion of certain evidence. Respondent Violet Morrow forged appellant's endorsement on a check made payable to him. Respondents contend the proceeds of this check were used to pay 17 Bar bills remaining from appellant's tenure as owner/manager. Violet Morrow received a deferred imposition of sentence contingent upon reimbursement of appellant for the amount of the check. We surmise from the record that reimbursement did in fact take place. Appellant sought to introduce the forged check as evidence of respondents' scheme to defraud him. The District Court granted respondents' motion in limine excluding testimony regarding the forgery as prejudicial. We agree.

13

We will not reverse the District Court's grant of a motion in limine absent an abuse of discretion. Wacker v. Park Rural Electric Co-Operative, Inc. (Mont. 1989), 783 P.2d 360, 361, 46 St.Rep. 1864, 1865. Appellant claims respondents schemed to defraud him by misrepresenting the transferability of certain assets of the 17 Bar. The probative value of evidence regarding Violet Morrow's forgery of appellant's endorsement is outweighed by its prejudicial nature. Introduction of such evidence would not tend to prove or disprove that respondents knowingly misrepresented the truth regarding the transferability of the 17 Bar liquor license. The District Court properly excluded such evidence.

The District Court captured the flavor and essence of this case in dismissing the jury:

> I believe the jury is entitled to some explanation. The Court has taken this case away from you, and I have directed a verdict in favor of the [respondents], and I am going to now excuse you.
>
> And someday, if you ever have any questions, I will be glad to answer them, but at this time I think it best that the jury is now excused, with our thanks.
>
> I don't know. I do know the weather and I do know the type of case and I do know that you must have had a hard time following some of it and, in any event, I certainly do appreciate the fact that you are all here and all timely and all attentive. It is unusual and, in any event, you are free to go.

Affirmed.

_Diane G. Bar_
Justice

We concur:

_R.C. McDonough_

14

John Conway Harrison

William E Hunt Sr

John C. Sheehy
_____
Justices