No.   91-360

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

STEPHEN M. BARRETT,

      Plaintiff and Respondent,

-vs-

HOWARD M. LARSEN,

      Defendant and Appellant.

**FILED**

FEB 4 1993

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Larry W. Moran, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Gary  L.  Beiswanger,  Attorney  at  Law,  Billings,
Montana

      For Respondent:

          Steven B. Ungar, Attorney at Law, Bozeman, Montana

Submitted on Briefs:   February 20, 1992

Decided:   February 4, 1993

Filed:

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

The Eighteenth Judicial District Court, Gallatin County, entered judgment on a jury verdict awarding Stephen Barrett damages for Howard Larsen's breach of a partnership agreement. Howard Larsen appeals from the judgment and from the court's order denying his motion for judgment notwithstanding the verdict or for new trial. We affirm.

We restate the issues on appeal as:

1. Did the District Court err in instructing the jury?

2. Did the District Court err in denying Larsen's motions for directed verdict and for judgment notwithstanding the verdict?

3. Did the District Court err in admitting Barrett's Exhibit No. 21 into evidence?

4. Did the District Court err in denying Larsen's § 25-11-102, MCA, motion for a new trial?

In September of 1979, Stephen Barrett (Barrett), Howard Larsen (Larsen), and Michael Bartlett (Bartlett) purchased a 37 acre tract of undeveloped real estate near Bozeman, Montana. The three men were longtime friends; Barrett practiced law in Bozeman, Montana, and Larsen and Bartlett were attorneys in southern California.

Barrett, Larsen and Bartlett each contributed $8,500 to the purchase of the property. Barrett signed the purchase agreement on his own behalf, and for Larsen and Bartlett pursuant to power of attorney agreements. According to the purchase agreement, the men owned the property as tenants in common, each holding an undivided one-third interest. They intended to subdivide, and later resell,

2

the property for profit. No written partnership agreement was executed.

The men agreed that Barrett would perform the tasks associated with subdividing the undeveloped real estate. Barrett divided the property into three tracts. Each of two tracts encompassed approximately 4.73 acres; Barrett conveyed one such tract to his wife, Janis Barrett, and the other tract to Larsen's wife, Lana Larsen. The third tract encompassed the remaining 28 acres.

In September of 1980, Barrett, Larsen and Bartlett each contributed $2,491.66 toward the first annual payment required by the purchase agreement. Barrett and Larsen made additional contributions the following September when the second annual payment was due. Bartlett was unable to contribute and, as a result, the respective interests in the property were no longer equal. Larsen sent Barrett a letter, dated September 28, 1981, acknowledging this change:

> Enclosed please find my check in the amount of $4,984. This letter confirms the agreement reached among you, Mike and myself whereby in consideration of additional contributions by you and me, the partners' capital accounts are to be adjusted as follows:
> Steven M. Barrett 36.6%
> Michael J. Bartlett 25.7%
> Howard M. Larsen 37.7%

In October, 1981, the three undeveloped tracts of real estate were exchanged for a fully-rented commercial building in Belgrade, Montana (Belgrade Property). The Agreement for Sale, Purchase and Exchange of Real Property was signed by the Barretts, and by Barrett for Larsen, Lana Larsen and Bartlett pursuant to power of attorney agreements. The Belgrade Property was conveyed by

3

warranty deed to the Barretts.

At the time of the exchange, the Belgrade Property was subject to an existing loan, which the Barretts assumed. The Barretts refinanced the loan before a balloon payment was due in 1983. The Barretts were the only signatories on the refinanced loan. Including Larsen and Bartlett as co-signors would have required obtaining updated financial information from Larsen and Bartlett, an inconvenience that Barrett sought to avoid. Barrett informed Larsen and Bartlett that the loan had been refinanced in this manner.

In October, 1985, the major tenant of the Belgrade Property moved out at the expiration of its lease. Barrett's subsequent attempts to sell, lease or exchange the property were unsuccessful. In a letter dated February 24, 1986, Barrett informed Larsen and Bartlett of his plans to refinance the mortgage a second time in order to attract potential purchasers. Barrett sent a copy of the loan application to Larsen and Bartlett and indicated that they would be co-signing the loan. Barrett stated that he was reluctant to refinance the mortgage in the partnership's name because he did not have the required partnership documentation. Additionally, he requested, and Larsen and Bartlett sent, additional contributions based on their respective interests in the Belgrade Property to cover the ongoing expenses of the building. The Barretts ultimately refinanced the loan in their names only.

Early in 1988, Bartlett informed Barrett and Larsen that he was withdrawing from the investment. Larsen discussed the withdrawal with Barrett and indicated that he would not increase

4

his interest in the Belgrade Property. Accordingly, Barrett assumed Bartlett's interest, increasing his interest to 62.3%. Larsen continued to have a 37.7% interest in the property.

Barrett's ongoing attempts to sell or otherwise dispose of the Belgrade Property were unsuccessful. In December, 1987, Barrett found a tenant to lease a major portion of the building. However, the loan payments and the utility, insurance, and tax expenses associated with the property continued to exceed the rental income. Barrett and Larsen made additional contributions to supplement the rental income in March, May and November of 1988, and February of 1989, according to their percentage interests in the property. In March of 1989, Larsen informed Barrett that he would not make additional contributions.

On April 20, 1990, Barrett sued Larsen for breach of a partnership agreement. A jury trial began on February 12, 1991. Larsen moved unsuccessfully for a directed verdict after Barrett's case-in-chief. The jury ultimately determined that a partnership existed between Barrett and Larsen with respect to the Belgrade Property and that Larsen breached the partnership agreement by failing to make contributions; it awarded Barrett $45,255 in damages, plus interest. The District Court denied Larsen's motion for judgment notwithstanding the verdict or for new trial. Larsen appeals.

Did the District Court err in instructing the jury?

Larsen contends that the District Court improperly instructed the jury by refusing the following proposed instruction:

5

Instruction 20. Where purported partners did not hold property jointly, had unequal control over assets, held no joint bank accounts, and did not file partnership tax returns, no partnership existed.

Larsen relied on Wiberg v. 17 Bar, Inc. (1990), 241 Mont. 490, 498, 788 P.2d 292, 297, citing Matter of Estate of Smith (1988), 230 Mont. 140, 147-48, 749 P.2d 512, 516-17, as his sole authority for the instruction.

Barrett contends Larsen's reliance on Wiberg is misplaced. According to Barrett, the Wiberg language upon which Larsen relies is a partial recitation of some, but not all, of the facts upon which we determined that there was insufficient evidence to support the jury's finding of a partnership in Smith. Barrett asserts that Larsen's instruction is neither our holding in Wiberg nor an accurate statement of our holding in Smith. We agree.

In Smith, we focused on § 35-10-201(1), MCA, and the elements of a partnership set forth in Bender v. Bender (1965), 144 Mont. 470, 397 P.2d 957, to determine whether evidence supported the existence of a partnership. Section 35-10-201(1), MCA, defines a partnership as "an association of two or more persons to carry on as co-owners a business for profit." Bender set forth the following elements of a partnership:

"To establish . . . a partnership, it is necessary to determine the intent of the parties: such business relationships arise only when the parties intend to associate themselves as such. There must be some contribution by each co-adventurer or partner or something promotive of the enterprise. There must be joint proprietary interest and a right of mutual control over the subject matter of the enterprise or over the property engaged therein, and there must be an agreement to share the profits. [Citation omitted.] The intention of the parties has to be clearly manifested, [citing cases] and must be ascertained from all the facts and

6

circumstances and actions and conduct of the parties. [Citation omitted.]"

Smith, 230 Mont. at 145, 749 P.2d at 515, quoting Bender, 144 Mont. at 480, 397 P.2d at 962. On the basis of § 35-10-201(1), MCA, and the Bender elements, we determined in Smith that the evidence did not support a finding that a partnership existed.

Both Smith and Wiberg rely primarily on § 35-10-201(1), MCA, and the criteria for a partnership set forth in Bender. Nothing in either Smith or Wiberg suggests that the four elements asserted by Larsen are the sole and exclusive elements of a partnership, as a matter of law. We hold that the District Court did not err in refusing Larsen's proposed jury instruction.

Did the District Court err in denying Larsen's motions for directed verdict and for judgment notwithstanding the verdict?

Our standard for reviewing a trial court's denial of a motion for judgment notwithstanding the verdict is the same as our standard for reviewing a motion for a directed verdict; a directed verdict may be granted only when it appears the non-moving party could not recover upon any view of the evidence, including the legitimate inferences to be drawn from it. Hash v. State (1991), 247 Mont. 497, 500, 807 P.2d 1363, 1365. On appeal, we review the evidence in a light most favorable to the prevailing party to determine whether substantial evidence supports the jury's verdict. Id.

In support of his motion for directed verdict, Larsen contended that Barrett failed to present a prima facie case

7

establishing the existence of a partnership. After the District Court entered judgment on the jury verdict in Barrett's favor, Larsen moved for judgment notwithstanding the verdict on essentially the same basis. The District Court denied both motions. As our discussion in the previous issue indicates, the elements required to establish a partnership are set forth in § 35-10-201(1), MCA, and Bender.

Larsen asserts two arguments in support of his claim that the requirements for the existence of a partnership under § 35-10-201(1), MCA, are not met. First, he argues that he and Barrett are not co-owners of the Belgrade Property. While it is true that the Barretts are the record title holders of the property and refinanced the loan in their names, substantial evidence indicates that Larsen is a co-owner. Larsen contributed to the purchase of, and was a record title holder for, the undeveloped real estate. He acknowledged that his "partners' capital account" reflected a 37.7% interest in the property in a letter he sent Barrett.

The undeveloped real estate was later exchanged for the Belgrade Property. Via an undisputed power of attorney agreement, Larsen was a party to the Agreement for Sale, Purchase and Exchange of Real Property. Barrett informed Larsen that while the Barretts were the record title holders, the actual interest was held by himself, Larsen and Bartlett. Larsen continued to contribute to the operating expenses of the building on that property for several years after the purchase in amounts reflecting his percentage interest. Larsen's co-ownership of the Belgrade Property is supported by substantial evidence.

8

Larsen next contends, without citing authority, that the purchase and sale of real estate does not constitute a business for profit. It is well established in Montana, however, that a partnership may be created for the purchase and sale of real estate. Walsh v. Ellingson Agency (1980), 188 Mont. 367, 372, 613 P.2d 1381, 1384. In Walsh, two defendants had purchased properties as tenants in common with equal contributions, and had shared the profits upon resale. One defendant collected rent generated by the property from which the suit arose, using the rental proceeds to pay property taxes and maintain the property. We upheld the district court's conclusion that the defendants were engaged in a partnership.

The case before us is analogous to Walsh. Here, Barrett, Bartlett and Larsen purchased the undeveloped real estate as tenants in common with equal contributions, intending to resell the property for a profit. Barrett testified that Larsen consented to the exchange of the real estate for the commercial building. Larsen contributed to the investment according to his percentage interest. Barrett collected and applied the rent to the ongoing expenses of the building. Larsen testified that had the building sold, he would be entitled to 37.7% of any profit realized. Substantial evidence indicates that Barrett and Larsen were engaged together in a business for profit.

The same evidence establishing co-ownership of a business for profit establishes certain partnership criteria under Bender: Larsen's contribution, joint proprietary interest, and the right to share the profits. Additionally, the record reflects that Larsen

9

had a right to mutually control the property. Larsen admitted that he delegated the management of the undeveloped real estate to Barrett, and that the delegation continued after the exchange for the Belgrade Property. Furthermore, Barrett testified that he exchanged the undeveloped property for the Belgrade Property with Larsen's consent and that he discussed the refinancing with Larsen.

Reviewing the record in a light most favorable to Barrett, we conclude that the jury's determinations that a partnership existed between Barrett and Larsen with respect to the Belgrade Property and that Larsen breached the partnership agreement is supported by substantial evidence. We hold that the District Court did not err in denying Larsen's motion for directed verdict and for judgment notwithstanding the verdict.

Did the District Court err in admitting Barrett's Exhibit No. 21 into evidence?

Larsen claims that the District Court erred in admitting Barrett's Exhibit No. 21, entitled Plaintiff's Damage Summary. The mortgage, insurance, tax, and utility payments made by Barrett after Larsen withdrew from the partnership; the outstanding taxes on the property; and the outstanding balance on the mortgage loan were summarized on the exhibit. The amounts were multiplied by 37.7%, Larsen's interest in the property, to establish the amount of damages claimed by Barrett.

The court admitted the exhibit into evidence under Rule 1006, M.R.Evid., which provides:

The contents of voluminous writings, recordings or

10

> photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at a reasonable time and place. The court may order that they be produced in court.

The admissibility of evidence is within the discretion of the district court; we will not reverse its ruling absent an abuse of discretion. Massman v. City of Helena (1989), 237 Mont 234, 240, 773 P.2d 1206, 1210.

Larsen contends that the documents which formed the basis for the summary exhibit were not sufficiently voluminous to allow the admission of the exhibit under the Rule. However, Rule 1006, M.R.Evid., does not require the underlying documents to be so voluminous that an in-court examination would be physically impossible, only that such examination would not be convenient. Here, the exhibit summarized mortgage, insurance, tax and utility payments Barrett made between the time Larsen withdrew from the partnership and the date of trial as well as outstanding taxes and the balance on the loan. The exhibit also reflected Barrett's calculation of his damages, made by multiplying the expenditures and outstanding balances by Larsen's percentage interest. Rule 1006, M.R.Evid., expressly provides that the contents of the voluminous documents may be presented in the form of a calculation.

Additionally, Larsen contends that the documents were not made available to him prior to trial with the knowledge that a summary would be prepared, a condition he asserts must be met before the exhibit can be admitted under the Rule. Larsen cites no authority to support his contention, nor does the plain language of the Rule

11

impose such a requirement. Larsen admitted that he reviewed a box of documents pursuant to his request for production. He does not assert that the summarized documents were not among them.

The record reveals that Barrett laid a proper foundation for the admission of the exhibit. Furthermore, Larsen was free to test the veracity of the summary exhibit through cross-examination or request the court to order Barrett to produce the underlying documents; he did neither. We hold that the District Court did not abuse its discretion in admitting Barrett's Exhibit No. 21 into evidence.

Did the District Court err in denying Larsen's § 25-11-102, MCA, motion for a new trial?

Larsen contends that he is entitled to a new trial under § 25-11-102(6), MCA, on the grounds that, as a matter of law, there is insufficient evidence of record to support the existence of a partnership. The decision to grant or deny a new trial is within the discretion of the district court; we will not overturn its decision absent an abuse of discretion. Tope v. Taylor (1988), 235 Mont. 124, 131-32, 768 P.2d 845, 849-50. As our previous discussion indicates, Barrett presented sufficient evidence to establish the existence of a partnership. We hold that the District Court did not err in denying Larsen's motion for new trial based on insufficient evidence.

Larsen also contends that he is entitled to a new trial under § 25-11-102(5), MCA, on the basis that the jury awarded excessive damages. He asserts that the jury awarded damages based on

12

Barrett's damage summary exhibit and, therefore, that $37,700 of the $45,255 award represents 37.7% of the outstanding balance on the loan. Larsen contends that including his share of the outstanding balance as damages is excessive because the value of the property is not taken into consideration. According to Larsen, damages relating to the loan balance cannot be ascertained until foreclosure occurs and a deficiency determined.

A district court may not grant a motion for new trial pursuant to § 25-11-102(5), MCA, unless it appears that excessive damages were awarded under the influence of passion or prejudice. Gibson v. Western Fire Ins. Co. (1984), 210 Mont. 267, 290, 682 P.2d 725, 738. Upon review, we will not disturb a district court's order denying a new trial when the damage award is supported by the record:

> "It is not a question of the amount this Court would have awarded under the circumstances. It is not the amount which in our opinion would compensate the injured party; rather, it is a question of what amount of damages will the record in the case support when viewed, as it must be, in the light most favorable to the plaintiff. . . ."

French v. Ralph B. Moore, Inc. (1983), 203 Mont. 327, 336, 661 P.2d 844, 849, quoting Ashley v. Safeway Stores, Inc. (1935), 100 Mont. 312, 330, 47 P.2d 53, 62.

Larsen has not asserted and, given the case before us, could not establish that the jury awarded excessive damages under the influence of passion or prejudice. The damage award mirrors Barrett's testimony and summary exhibit and, therefore, is supported by the record. Barrett and Larsen agreed to submit the issue of damages to the jury on the basis of breach of contract

13

rather than the statutory provisions governing the dissolution of a partnership. Barrett testified that the $37,700 was a reasonable estimate of his future damages caused by Larsen's breach of the partnership agreement. Larsen did not object to the estimate of future damages during Barrett's direct testimony, challenge the estimate of future damages on cross-examination, or undermine it during his own case. We hold that the District Court did not abuse its discretion in denying Larsen's motion for new trial based on excessive damages.

Affirmed.

/s/ Karla M. Gray
Justice

We concur:

/s/ J. A. Turnage
Chief Justice

/s/ Terry N. Trieweiler

/s/ R. C. McDonough

/s/ William E. Hunt, Sr.
Justices

14

February 4, 1993

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Gary L. Beiswanger
Attorney at Law
P.O. Box 20562
Billings, MT 59104

Steven B. Ungar
Attorney at Law
P.O. Box 1348
Bozeman, MT  59771

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
       Deputy